**Walter W. RICHESON, Jr., Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 64A04–9407–CR–291.

Court of Appeals of Indiana, Fourth District.

March 22, 1995.

Rehearing Denied May 22, 1995.

Transfer Denied July 27, 1995.

James V. Tsoutsouris, Porter County Public Defender, Valparaiso, for appellant.

Pamela Carter, Atty. Gen., Mary Dreyer, Deputy Atty. Gen., Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Walter William Richeson, Jr. appeals the revocation of his probation. We affirm.

### ISSUES

I. Was Richeson denied due process when the trial court revoked his probation?

II. Did the trial court abuse its discretion by denying Richeson's request to testify dur-

ing the State's case in chief regarding the voluntariness of his confession?

III. Was there sufficient evidence to support the revocation of Richeson's probation?

IV. Did the trial court err in refusing to grant Richeson jail time credit in Porter County for time served in Lake County?

### FACTS

On November 22, 1991, Walter William Richeson, Jr. pleaded guilty to burglary, a class C felony. He received a four year sentence, two years of which were suspended. Richeson also received two years of formal probation, and he was ordered to pay probation user's fees, and $655.00 in restitution in equal monthly installments.

On December 8, 1993, Mary Jane Walsworth, Porter County probation officer, filed a petition to revoke Richeson's probation.[1] The petition alleged that Richeson 1) was charged with three counts of attempted murder and three counts of criminal recklessness in connection with a drive-by shooting in Lake County on November 15, 1993; 2) was charged in September 1993 with driving with a suspended license; 3) was $80.00 in arrears in probation user's fees; and 4) owed a balance of $421.20 in restitution. A probation revocation fact-finding hearing was held on April 19, 1994. Walsworth testified that Richeson 1) had been charged with driving with a suspended license; 2) was $80.00 in arrears in probation user's fees; and 3) had not been paying his monthly restitution payments. Walsworth also testified that Richeson had signed a receipt acknowledging that he had received a copy of the terms of his probation, and that an arrest would violate those terms.

Edward M. Davies, Lake County police officer, testified about the details of the drive-by shooting. Davies testified that he spoke with the shooting victims, Mr. and Mrs. Robert Foster and their son, Michael, shortly after the incident had occurred. Mr.

1. This was the second petition to revoke Richeson's probation. The first petition, filed August 17, 1992, alleged that Richeson had been arrested and charged with minor consuming alcohol on July 29, 1992, five days after his release from the Department of Correction. On October 5, 1992, Richeson failed to appear at his revocation hearing, and an arrest warrant was issued. Richeson was apprehended, and although he initially denied the petition's allegations, he later admitted them and was sentenced to thirty days in the Porter County jail.

and Mrs. Foster were sleeping when they awoke to loud noises. Mr. Foster got out of bed, and Michael advised him to get down because it was a drive-by shooting. Police officers found casings along the street. Davies further testified that he spoke with Jay Kempton, Richeson's employer, on November 19, and made arrangements to meet with Richeson on November 19, so that Richeson could turn himself in. In addition, Davies testified that he advised Richeson of his *Miranda* rights and that Richeson signed a waiver of rights form. According to Davies, Richeson then gave a statement to the police admitting that he had participated in the drive-by shooting by firing shots at the Fosters' residence. In addition, Richeson provided details about the weapons used, the other participants and the motive for the drive-by shooting. Davies testified that the statement started at 5:00 p.m. when he advised Richeson of his *Miranda* rights, and ended at approximately 7:20 p.m. Davies identified his signature as the signature of the affiant on the charging information which he then filed with the Lake County prosecutor.

The Porter County trial court found that Richeson had participated in the drive-by shooting and violated the terms of his probation. As a result, the trial court revoked Richeson's probation and imposed a two year sentence. In addition, the court denied Richeson jail time credit in Porter County for time served in Lake County in connection with the Lake County drive-by shooting.

## DECISION

### I. *Probation Revocation Petition*

■ Richeson argues that he was denied due process pursuant to *Braxton v. State* (1994), Ind.App., 638 N.E.2d 440, *reh'g denied*, (1994), Ind.App., 640 N.E.2d 726. Specifically, Richeson attempts to analogize his case to *Braxton*, wherein this court found that "Braxton was denied due process when the trial court revoked her probation without providing her with notice that the state sought to revoke the probation and without providing her with written notice of the alleged probation violations." *Id.* at 441. The State argues that Richeson's reliance on *Braxton* is misplaced. We agree with the State.

In *Braxton*, the trial court sentenced the defendant to 15 years in the Department of Correction, with one year executed at the Madison County Detention Center. Upon release from the detention center, Braxton was to serve one year of in-home detention and probation for 13 years. The probation department filed a Petition for Termination of In–Home Detention Privileges on July 26, 1993. The trial court held an evidentiary hearing and found that Braxton had violated conditions of her probation and in-home detention. The court then revoked her probation and ordered her to serve the remaining 13 years of her sentence in the Department of Correction. Our review of the record revealed that Braxton was not informed that her in-home detention was a condition of her probation. Furthermore, because the petition filed by the probation department alleged only that Braxton had violated in-home detention rules, and sought to terminate her in-home detention, we found that Braxton was not informed that her probation was to be revoked or that she had allegedly committed probation violations.[2] We concluded that, "due process demands that [a probationer] first be given written notice that the state has petitioned to revoke her probation and written notice of the alleged probation violation." *Id.*

We find that the facts before us are distinguishable from *Braxton*. Here, the record reveals that Richeson was informed of the conditions of his probation as evidenced by his signature on the Conditions of Probation form. R. at 83. That form includes the following provisions:

11. **LAW AND CONDUCT:** I shall comply with all Municipal, County, State and Federal Laws, Ordinances and Orders, and I shall conduct myself as a good citizen. If arrested, I shall report this fact to my Probation Officer within 24 hours. An arrest is considered a violation of Probation,

---

2. In fact, it is questionable whether Braxton had ever been placed on probation. Here, there is ample evidence that Richeson had been placed on probation.

and a Petition will be filed with the Court. R. at 83.

Richeson also received notification of the alleged violations as evidenced by the revocation petition, a copy of which was sent to Richeson. The petition states in pertinent part as follows:

Mary Jane Walsworth, Probation Officer of the Court, presents an official report upon the conduct and attitude of the probationer, Walter William Richeson, Jr., who was placed on Formal Probation by the Honorable Raymond D. Kickbush, sitting in the Court at Valparaiso, Indiana on the 22nd day of November, 1991, who fixed the period of Probation Supervision at TWO (2) YEARS and imposed the General Terms and Conditions of Probation theretofore adopted by the Court....

**RESPECTFULLY PRESENTING PETITION FOR ACTION OF THE COURT FOR CAUSE AS FOLLOWS:**

1. On November 18, 1993 the probationer was charged with Attempted Murder, A Felony, 3 Counts and Criminal Recklessness, D Felony, 3 Counts....[3]

2. In September of 1993 the probationer was charged with Driving While Suspended, A Misdemeanor....

3. As of December 1, 1993, the probationer is $80.00 in arrears with Probation User's Fees.

4. As of December 1, 1993, the probationer has a balance of $421.20 of a total $655.00 in restitution. R. at 18.

Richeson was informed of the conditions of his probation, and he received written notice of the alleged probation violations for which the State was seeking to revoke his proba-

tion. R. at 35. There was no due process violation in this case.[4]

## II. *Richeson's Request to Testify*

■ Richeson argues that the "trial court denied [his] due process rights by refusing to hold a hearing to determine the voluntariness of his statement contrary to *Jackson v. Denno* (1964) 378 U.S. [368] 369 [84 S.Ct. 1774, 12 L.Ed.2d 908]." Richeson's Brief, p. 9. Specifically, Richeson argues as follows:

When the prosecutor offered evidence that Appellant had made a statement to police, Appellant objected as follows:

DEFENSE COUNSEL: Your Honor, the Defendant would object to the admission of State's Exhibit 1 on the grounds that the Defendant did not knowingly waives [sic] his rights due to the fact that he was or had been intoxicated hours before and was suffering from nausea or lack of sleep.

COURT: What's the evidence on that?

DEFENSE COUNSEL: I guess I should call the defendant at this point.

COURT: I'll overrule the objection, receive the document into evidence, over your objection. (Trans., pp. 62, 11. 22–25; p. 63, 11. 1–6).

It was established in *Jackson v. Denno* ... that a "defendant who objects to the admission of a confession is entitled to a fair hearing in which the voluntariness of his confession is actually and reliably determined."

Richeson's Brief, p. 9–10.

We first note that the excerpt of the record to which Richeson directs us reveals the colloquy surrounding the admission of Richeson's waiver of rights form (Exhibit 1)—not

---

3. We observe that throughout his brief, Richeson argues that the "petition to revoke probation did not contain allegations that appellant had engaged in criminal activity." We disagree. The petition alleges that Richeson was charged with both attempted murder and criminal recklessness, both of which are clearly "criminal activity."

4. Richeson further argues that his "Due Process rights were violated when the Trial Court made a finding which was the basis of revocation of appellant's probation in allegations not set forth

in the petition." Richeson's Reply Brief, p. 4. This argument is without merit. The revocation petition alleges that Richeson was charged with attempted murder and criminal recklessness. The court revoked his probation after finding that Richeson had fired shots at a residence, the incident for which Richeson had been charged with attempted murder and criminal recklessness. Accordingly, the trial court's finding which was the basis of Richeson's probation revocation corresponds with the allegation in the probation revocation petition.

his confession (Exhibit 2). Our review of the record reveals the following colloquy surrounding the admission of Richeson's confession during the State's case in chief:

DEFENSE COUNSEL: Detective Davies, did you ask Mr. Richeson how many hours of sleep he had?

WITNESS: No, sir, I did not.

DEFENSE COUNSEL: Did he appear to be disheveled when he was with you?

WITNESS: I'm sorry?

DEFENSE COUNSEL: Was his appearance disheveled? Was his hair messy? Clothes messing? Strike that. Did he tell you that he had not been sleeping the night before?

WITNESS: I don't recall him telling me that. No, sir.

DEFENSE COUNSEL: Did you have the occasion to smell his breath?

WITNESS: No. sir. I imagine that I had occasions, but I don't recall any odor that would have been of any intoxicant. Had that been I would have asked that particular question and I would have stopped the statement at that time.

DEFENSE COUNSEL: Did he ever indicate to you that he was nauseated, feeling as if he had a hangover and would vomit?

WITNESS: No, sir. I believe, if I am correct, I believe we even had something to eat prior to going to the station, because we did meet at a restaurant and I believe Mr. Kempton had purchased him something to eat and I also purchased something to eat.

DEFENSE COUNSEL: I have no further questions, Your Honor. It seems I would need to call the Defendant to testify at this point.

COURT: Alright. We have an offer, then, on State's Number 2.

DEFENSE COUNSEL: Yes. And in order to show the nonvoluntariness of the statements I would need to call the Defendant to testify as to his physical....

COURT: Well, the question is do you have any ...

DEFENSE COUNSEL: ... objection to his offer?

DEFENSE COUNSEL: We object on the ground that it is not voluntary.

COURT: Overruled. I'll receive State's Exhibit 2 into evidence. It's admitted.

R. at 67–68.

Although Richeson argues that the trial court erred in refusing to hold a hearing to determine whether his statement was voluntary, Richeson did not request a hearing. Rather, he requested the opportunity to testify during the State's case in chief at a probation revocation hearing.

We observe that the "trial court has the responsibility to manage and control the proceedings which are conducted before him and is given wide latitude of discretion in carrying out his duties." *Pitman v. State* (1982), Ind., 436 N.E.2d 74, 78. Ind.Trial Rule 43(G), which prescribes the basic order of proof, states as follows:

[T]he party upon whom rests the burden of the issues may briefly state his case and the evidence by which he expects to sustain it. Second, the adverse party may then briefly state his defense and the evidence he expects to offer in support of it. Third, the party on whom rests the burden of the issues must first produce his evidence thereon; the adverse party will then produce his evidence which may then be rebutted.

Thus, when the trial court denied Richeson the opportunity to testify during the State's case in chief, the court was following the basic order of proof. Richeson had the opportunity to present his version of the facts surrounding the confession during his case in chief. However, the record reveals that when the trial court offered Richeson the opportunity to present evidence, Richeson rested without presenting any evidence. The trial court did not abuse its discretion in denying Richeson's request to testify during the State's case in chief regarding the voluntariness of his confession.

III. *Sufficiency of the Evidence*

Richeson states the issue as the trial court having erred in taking judicial notice of the charging information and probable cause affidavit filed in the Lake County case. Specifically, Richeson argues as follows:

One of the allegations in the Petition to Revoke Probation filed against Appellant was that he had been "charged with Attempted Murder, A Felony, 3 Counts and Criminal Recklessness, D Felony, 3 Counts ..." No documentary evidence regarding said charges was admitted during the hearing. In his remarks revoking Appellant's probation the Trial Court stated:

> I know we hear the old saw the Court always takes judicial notice of its own record, and I think in the state of Indiana that this Court can take judicial notice of the records of the Superior Court of Lake County, Criminal Division, which shows that an Information has been filed. Attached to that Information, of course, is Officer Davies affidavit, a Probable Cause Affidavit that he has signed.

Richeson's Brief, p. 7–8.

■ The State concedes, and we agree, that the Porter County trial court erred in taking judicial notice of the legal proceedings in Lake County. *See, Bane v. State* (1991), Ind.App., 579 N.E.2d 1339, *trans. denied.* However, "the improper admission of evidence is harmless error when the conviction is supported by such substantial independent evidence of guilt as to satisfy the reviewing court that there is no substantial likelihood that the questioned evidence contributed to the conviction." *Wickizer v. State* (1993), Ind., 626 N.E.2d 795, 800. Accordingly, we must determine whether there is sufficient independent evidence to support the revocation of Richeson's probation.

In determining whether there is sufficient evidence to support a probation revocation, we use the same standard of review as we do in any other sufficiency question. *Hensley v. State* (1991), Ind.App., 583 N.E.2d 758, 759. We consider only the evidence most favorable to the State, along with all relevant inferences to be drawn therefrom. *Id.* at 760. If there is substantial evidence which supports the trial court's judgment, we will affirm. *Id.*

■ Probation revocation is governed by Ind.Code 35–38–2–3. *Isaac v. State* (1992), Ind., 605 N.E.2d 144, 147, *cert. denied,* —

U.S. ——, 113 S.Ct. 2373, 124 L.Ed.2d 278. When a revocation petition is filed, the Court must hold a fact finding hearing on the alleged probation violation. I.C. 35–38–2–3(d); *Isaac,* at 147. A revocation hearing is in the nature of a civil action, and the alleged violation need be proven only by a preponderance of the evidence. *Isaac,* at 147. The State need not show that a defendant was convicted of a crime in order for the trial court to revoke the defendant's probation. *Smith v. State* (1987), Ind.App., 504 N.E.2d 333, 334. Rather, where "there is evidence submitted at the hearing from which the trial court could find that an arrest was reasonable and that there is probable cause for belief that a defendant violated a criminal law revocation of probation is permitted." *Id.*

In *Smith,* the defendant was convicted of child molesting in 1983, and placed on probation. In January 1986, Smith was questioned by police regarding another child molesting incident. Smith was properly advised of his rights, and he confessed to the second incident of child molesting. Smith was arrested, and his confession was the only evidence regarding the subsequent crime at the revocation hearing. The trial court revoked Smith's probation. Smith appealed, arguing that his confession, absent any corroborating evidence, was insufficient evidence on which to base the revocation of his probation. This court found that "Smith's confession established probable cause for his arrest and was sufficient evidence to support the revocation of his probation." *Id.*

■ Here, Detective Davies testified that Richeson surrendered to him. According to Davies, he advised Richeson of his *Miranda* rights, and Richeson waived them. Davies further testified that Richeson confessed to the drive-by shooting. Richeson's detailed nine page confession was admitted into evidence. This confession established probable cause for his arrest and was sufficient evidence to support the revocation of Richeson's probation.

Richeson further argues that there was "not proof identifying [him] as the person charged in those proceedings." Richeson's entire argument is as follows:

Police Officer Davies did not identify Appellant. Neither did Probation Officer Walsworth. This was a fatal defect. *Szymenski v. State* (1986), Ind.App. 500 N.E.2d 213.

We fail to understand why Richeson has directed us to *Szymenski*. Richeson does not explain why *Szymenski* supports his contention that Davies and Walsworth's failure to identify Richeson was a fatal defect. In addition, our review of *Szymenski* reveals that the case does not support Richeson's contentions. Rather, the case provides us with a basis to find that there was proof identifying Richeson as the person charged in the Lake County proceedings.

In *Szymenski*, the defendant claimed that the evidence was insufficient to support the revocation of his suspended sentence because no evidence was introduced identifying him as the person who had initially pleaded guilty to criminal mischief. This court responded as follows:

> Admittedly, the State made no effort to prove that the Thomas G. Szymenski who pled guilty to criminal mischief on August 9, 1985 was the same Thomas Szymenski who was the defendant at the revocation hearing. However, we believe there was sufficient evidence presented at trial to infer that the two Thomas Szymenskis were one and the same.

*Id.* at 215–16.

We noted in *Szymenski* that the same trial court judge presided over both proceedings, the State's only two witnesses were present at both proceedings, and there was testimony to infer that the victim, her mother and the judge were all aware that the person who pleaded guilty to criminal mischief on August 9, 1985, was the defendant at the revocation hearing.[5]

Here, Detective Davies identified Richeson as the person who gave the confession to the drive-by shooting. The *Miranda* form admitted into evidence listed the defendant's

name as Walter William Richeson and his date of birth as August 5, 1972. Richeson's confession, which was also admitted into evidence, listed his name, date of birth and social security number. The name, date of birth and social security number matched the name, date of birth and social security number on the petition to revoke probation. There was sufficient evidence presented at the revocation hearing to identify Richeson as the person charged with the Lake County drive-by shootings. Moreover, there was sufficient evidence to support the trial court's revocation of Richeson's probation.

## IV. *Jail Time Credit*

■ Richeson argues that the trial court erred in refusing to grant him jail time credit in Porter County for time served in Lake County in connection with the Lake County drive-by shooting. Specifically, Richeson argues that Porter County placed a detainer on him while he was incarcerated in Lake County, and that he was entitled to jail time credit for the length of time that the detainer was in effect. We disagree.

As the State points out, "[i]t is well settled that the determination of pre-trial credit depends on two criteria: 1) pre-trial confinement, and 2) the confinement is the result of the criminal charge for which the sentence is now imposed. *Cohen v. State* (1990), Ind., 560 N.E.2d 1246, 1249 (quoting *Dorsey v. State* (1986), Ind., 490 N.E.2d 260, 269)." State's Brief, p. 17.

In *Cohen*, the defendant argued that the trial court had improperly calculated his pretrial confinement credit. Specifically, Cohen argued that he was entitled to credit for the 508 days that he served in Illinois between January 28, 1984, when the Lake Superior Court sent a warrant as a detainer to the Sheriff of Cook County, Illinois, and June 19, 1985, when Cohen posted bond on Indiana Charges. Cohen also believed that he was entitled to 616 credit days for time served

---

5. We note that the facts in *Szymenski* are distinguishable from the facts before us. In *Szymenski*, the defendant at the probation revocation hearing claimed that there was insufficient evidence identifying him as the person who had pleaded guilty to the crime underlying the proba-

tion. Here, Richeson claims that there was insufficient evidence identifying him as the person who committed the subsequent crime in Lake County. However, this distinction is immaterial in our analysis.

between October 10, 1985 and June 18, 1987. Cohen had apparently served 434 of these 616 days in Illinois between October 10, 1985, when a detainer from Indiana was filed with the Cook County sheriff, and December 18, 1986, when Indiana took temporary custody over Cohen. Between December 18, 1986, and his sentencing on June 18, 1987, 182 days later, Cohen remained in Indiana custody.

Our supreme court first noted that a detainer is not an arrest. *Cohen,* at 1249. The court then stated as follows:

> Cohen has provided no evidence to show that either the January 28, 1984, detainer or the October 10, 1985, detainer served as a "hold" which would have caused Illinois to retain custody over the defendant even were no Illinois charges pending.... Cohen has not established any credit for the time between January 28, 1984 and June 19, 1985, or for the time between October 10, 1985, and December 18, 1986.... The trial court properly awarded credit only for the time that Cohen was actually held by Indiana between December 18, 1986, and June 18, 1987.

*Id.* at 1249–50.

Here, Richeson has provided no evidence to show that the Porter County detainer served as a "hold" which would have caused Lake County to retain custody over him even were no Lake County charges pending. The Porter County trial court did not err in refusing to grant Richeson jail time credit in Porter County for time served in Lake County.

Affirmed.

RILEY and RUCKER, JJ., concur.