Jerry L. DOWNS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 27A02–0404–CR–371.

Court of Appeals of Indiana.

May 24, 2005.

Transfer Denied Aug. 11, 2005.

Thomas D. Margolis, Muncie, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

CRONE, Judge.

**Case Summary**

Jerry L. Downs appeals the denial of his motion to dismiss, motion to correct error, and petition for post-conviction relief. We affirm.

**Issues**

Downs raises various issues, which we consolidate and restate as follows:

I. Whether the trial court properly denied Downs's motion to dismiss the State's motion to revoke his suspended sentence;

II. Whether the trial court's two-year sanction for direct contempt was appropriate; and

III. Whether the trial court properly denied Downs's petition for post-conviction relief.

Facts and Procedural History

We have been provided with the following sketchy facts of the relevant events:

On April 18, 2003, [Downs] placed a 911 call to report the murder of Michele Jaynes. Michael Andry with the Grant County Sheriff's Department arrived at [Downs's] residence and found [Downs] outside his home. [Downs] told Deputy Andry that he had witnessed Michael Collins murder the victim. Later Sergeant James Kinzie received Collins's statement about [Downs's] involvement in the incident.

Appellee's Br. at 3 (citations omitted). Downs adds that the State charged Collins[1] with Jaynes's murder, "and other charges were placed against" Downs. Appellant's Br. at 4. More specifically, the

---

1. Collins' appeal provides details of the events leading up to and including the murder. *See* *Collins v. State,* 826 N.E.2d 671, 674 (Ind.Ct. App., 2005).

chronological case summary reveals that on April 21, 2003, the State charged Downs, under cause number 27C01–0304–FB–32, with a total of eight counts: two counts of criminal confinement as class B felonies; possession of a firearm by a serious violent felon as a class B felony; possession of chemical reagents or precursors with intent to manufacture as a class D felony; dealing cocaine/methamphetamine as a class B felony; maintaining a common nuisance as a class D felony; possession of a machine gun as a class C felony; and neglect of a dependent as a class D felony. Appellant's App. at 1.

On June 24, 2003, Downs signed a plea agreement with an addendum attached thereto. The relevant terms of the agreement follow:

1. That [Downs] will enter a plea of guilty to the crime of: Count 1, Criminal Confinement, a Class B Felony, Count 3, Possession of a Firearm by a Serious Violent Felon, a Class B Felony, Count 5, Dealing in Methamphetamine, a Class B Felony, each of which carries a maximum sentence of twenty (20) years incarceration, a minimum sentence of six (6) years incarceration and a maximum fine of $10,000. Count 7, Possession of a Machine Gun, a Class C felony, which carries a maximum sentence of eight (8) years incarceration, a minimum sentence of two (2) years incarceration, and a maximum fine of $10,000.

2. That the STATE OF INDIANA and [Downs] agree that the sentence shall be on Count 1, Count 3, and Count 5, twenty (20) years incarceration with a cap of fifteen (15) years executed. The suspended portion of the sentence shall be served on supervised probation. Count 7, eight (8) years incarceration with a cap of six (6) years executed. The suspended portion of the sentence shall be served on supervised probation.

3. That Counts 2, 4, 6, and 8 shall be dismissed.

. . . .

5. That Counts 1, 3, and 7 shall run concurrent to each other but it is left up to the discretion of the Court whether Count 5 runs concurrent or consecutive to Counts 1, 3, and 7.

*Id.* at 8–9. The addendum required Downs to "testify truthfully in *State v. Michael Collins,* Cause # 27C01–0304–MR–31." *Id.* at 12.

On August 22, 2003, the trial court sentenced Downs as follows:

The Court now sentences [Downs] to the custody of the Indiana Department of Correction for twenty (20) years on Counts 1, 3 and 5 and eight (8) years on Count 7. The Court now orders that Counts 1, 3, and 7 run concurrently but that Count 5 run consecutively to Counts 1, 3 and 7. The Court now suspends five (5) years of [Downs's] sentence on Counts 1, 3, and 5 and two (2) years on Count 7, it being the intention of the Court that [Downs] receive a total incarcerated sentence of thirty (30) years followed by ten (10) years of probation.

*Id.* at 14–15.

On October 10, 2003, David Payne, Downs's counsel, withdrew. On October 14, 2003, Downs filed a pro se petition for post-conviction relief, asserting that Payne was ineffective for failing to review evidence with him, not filing a motion to suppress evidence obtained from the search, and failing to adequately explain or challenge the plea agreement. Also on that date, Thomas Margolis entered his appearance for Downs.

On February 4, 2004, Downs refused to testify at Collins' trial. In response, the court in that case advised Downs of the consequences of not testifying and then

permitted Downs to consult with his attorney on the matter. After hearing the court's advisement and consulting with his lawyer, Downs still refused to testify. Hence, on that date, the court issued an order, under cause number 27C01–0304–MR–31, finding Downs to be in direct criminal contempt pursuant to Indiana Code Section 34–47–2–2(1). Noting that the direct contempt brought confusion to the State's presentation of its case against Collins, the court ordered a two-year sentence "to run consecutively with [Downs's] sentence in 27C01–0304–FB–32." Exh. 1 at 2.

On February 10, 2004, the State filed a petition to revoke Downs's suspended sentence and noted the aforementioned finding of direct contempt. On February 20, 2004, Downs filed a motion to dismiss the State's petition to revoke his suspended sentence. On March 3, 2004, Downs filed a motion to correct error, in which he challenged the appropriateness of the two-year sentence for the finding of contempt. On March 10, 2004, the State filed an amended petition for revocation of suspended sentence, citing Downs's obstruction of justice for refusing to testify in Collins's trial, and the finding of direct contempt. Following a March 12, 2004 hearing, the court denied Downs's motion to dismiss and his motion to correct error. On April 6, 2004, Downs filed his notice of appeal.

On May 3, 2004, Downs filed an amended petition for post-conviction relief. Four days later, the court granted the State's motion to revoke Downs's suspended sentence and found that Downs had committed "a new crime, obstruction of justice, which amounts to a violation of his suspended sentence." Appellant's App. at 59. Accordingly, the court "reimposed" the ten years that had been suspended. *Id.* Following a hearing, the court also denied

Downs's petition for post-conviction relief, finding that Downs had failed to meet his burden of demonstrating either that his counsel had been ineffective or that his consent was involuntary or unknowing due to his psychological condition. Downs filed an amended notice of appeal on May 14, 2004.

## Discussion and Decision

### I. Denial of Motion to Dismiss the State's Motion to Revoke Suspended Sentence

Downs titles the first of his three arguments, "Motion to Dismiss." Appellant's Br. at 12. Yet, the substance of his first argument concerns a claim that Downs breached his plea agreement by refusing to testify in Collins' trial, and that therefore the agreement should be void. If the agreement is void, Downs's argument continues, then he could challenge the evidence seized from his residence. Relying on the successful motion to suppress filed by Collins in his murder case, Downs contends that had his counsel filed a motion to suppress, it too would have been granted. Downs then states:

> Further, there was the matter of the exposure to the revocation of the 10 year suspended sentence of the Plea Agreement, which flowed from the Plea Agreement and its clear and unambiguous terms and condition.

> [Downs] requests that the finding of the trial court be reversed, and remanded with the instructions to void the Plea Agreement in the matter.

Appellant's Br. at 14.

The State responds that Downs's argument is unstructured, develops nothing concerning his motion to dismiss, and therefore should be waived for "failure to present a cogent argument." Appellee's Br. at 7. In the alternative, the State contends that the trial court correctly revoked

Downs's suspended sentence because he violated a term of his probation when he committed a new criminal act by refusing to testify at Collins' trial.

Downs's first issue, as well as his brief as a whole, is hardly a model of clarity or conformity with our appellate rules. Indeed, although Downs lists six issues both in his table of contents and in his statement of the issues, his argument section is divided into only three unnumbered sections with headings that do not necessarily correlate with the substance beneath them. Appellant's Br. at 1.[2] Moreover, he begins the "arguments" with a list of cases and an extremely brief summary of each. He then follows up with various assertions that may or may not concern the previously cited cases. To the extent that we can discern Downs's arguments, we will address them. *See Breeck v. City of Madison*, 592 N.E.2d 700, 705 (Ind.Ct.App.1992) ("given our preference to decide appeals on their merits, we address [the] arguments as best we can discern them."), *trans. denied; see also Poynter v. Poynter*, 590 N.E.2d 150, 152 (Ind.Ct.App.1992) (noting that a party's contention barely approached the required cogent argument standard, yet addressing because "we are able to discern the crux of" it), *trans. denied.*

▮ The heart of the matter is whether the court properly revoked Downs's probation and reinstated his suspended sentence. In determining whether there is sufficient evidence to support a probation revocation, we use the same standard of review as with any other sufficiency mat-

ter. *Richeson v. State*, 648 N.E.2d 384, 389 (Ind.Ct.App.1995), *trans. denied.* We will consider only the evidence most favorable to the State, along with the reasonable inferences to be drawn therefrom. *Id.* Where there is evidence submitted at the probation revocation hearing from which the trial court could find that an arrest was reasonable and that there is probable cause for belief that a defendant violated a criminal law, revocation of probation is permitted. *Id.; see also Martin v. State*, 813 N.E.2d 388, 389 (Ind.Ct.App. 2004).

The court in Collins' case found Downs to be in direct criminal contempt for not testifying at Collins' trial. Noting the direct criminal contempt and asserting that Downs had committed a new crime (obstruction of justice by failing to testify) while on probation, the State sought revocation of his probation. Considering only the evidence most favorable to the revocation, we conclude that the State has presented substantial evidence of probative value to support the trial court's determination that Downs violated the probation condition against committing another criminal offense, i.e., obstruction of justice.[3] *See Goonen v. State*, 705 N.E.2d 209, 211–12 (Ind.Ct.App.1999) (concluding that State demonstrated obstruction of justice where defendant knowingly/intentionally withheld testimony in trial, hence revocation of probation was appropriate).

▮ As for Downs's argument that his failure to testify against Collins breached the plea agreement, thereby voiding it, we disagree. "[B]ecause plea agreements

---

2. Equally unusual is the caption on page one of Downs's brief, which is clearly from some unrelated appeal of a civil case between William R. Brown and Ricker Oil Company.

3. A person who "knowingly or intentionally in an official criminal proceeding or investigation ... withholds or unreasonably delays

in producing any testimony, information, document, or thing after a court orders him to produce the testimony, information, document, or thing" commits obstruction of justice, a class D felony. Ind.Code § 35–44–3–4(2)(A).

are contracts, the principles of contract law can provide guidance in the consideration of the agreement." *Lee v. State*, 816 N.E.2d 35, 38 (Ind.2004). "[A] party who has breached a contract cannot take advantage of his breach to relieve him of his contractual obligations." *Rogier v. Am. Testing and Eng'g Corp.*, 734 N.E.2d 606, 620 (Ind.Ct.App.2000) (citing *Am. Nat'l Bank & Trust Co. v. St. Joseph Valley Bank*, 180 Ind.App. 546, 554, 391 N.E.2d 685, 687 (1979) and 17A C.J.S. CONTRACTS § 458 (1963)), *trans. denied.* Applying the aforementioned rule, we cannot say it is Downs's prerogative to break his own plea agreement (by purposely violating one of its provisions) and consequently benefit himself. To reach the opposite conclusion would greatly diminish the usefulness and finality of plea agreements as parties would not be able to rely upon them.

## II. Propriety of Two–Year Sentence for Direct Contempt

█ Within his section titled "Contempt," Downs argues:

> There is/was the absence of stated justification for the stated sanction imposed by the trial court.
>
> In the absence of such specificity from the trial court, there may be the basis for a finding of direct contempt, however the two years was clearly unreasonable and excessive for the refusal to testify at the trial of Michael Collins; assuming arguendo that a finding of direct contempt was proper in the instant matter.

Appellant's Br. at 16. The State responds that Downs's challenge to the sentence imposed for the direct contempt is an impermissible collateral attack on that sentence. In the alternative, the State asserts that the two-year sentence was appropriate.

Assuming without deciding that Downs's challenge is not an impermissible

collateral attack, we address the propriety of the sentence. Preliminarily, we note that before its repeal in 1987, Indiana Code Section 34–4–7–6 limited punishment for contempt to a fine of $500.00 and/or imprisonment of no more than three months. *See Contempt of Steelman*, 648 N.E.2d 366, 369 (Ind.Ct.App.1995). We have stated, "in the absence of the statute, the power to punish contempt is limited by reasonableness." *In re Gardner*, 713 N.E.2d 346, 347 (Ind.Ct.App.1999) (citing *Hopping v. State*, 637 N.E.2d 1294, 1297 (Ind.1994)). In *Hopping*, our supreme court noted that punishment for contempt is "generally a matter left to the sound discretion of the trial court" and then applied the "manifestly unreasonable" standard. *Hopping*, 637 N.E.2d at 1297–98. Under the manifestly unreasonable standard, a court did not revise a sentence "authorized by statute" unless it determined that "no reasonable person could find the sentence appropriate given the particular offense and character of the offender." *See id.; see also* Ind. Appellate Rule 7(B) at 181 (West 2002) (repealed effective Jan. 1, 2001; formerly Ind. Appellate Rule 17). Now, however, we "may revise a sentence *authorized by statute* if, after due consideration of the trial court's decision, the Court finds the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) at 185 (West 2005) (emphasis added); *see also Neale v. State,* 826 N.E.2d 635, 638 (Ind., 2005) (discussing the difference between the old and new standard for revising sentences). However, both the old and the new standard for revising sentences apply to sentences "authorized by statute." Since there is no longer a statute setting out the punishment for contempt, it is unclear whether Appellate Rule 7(B) should apply in reviewing contempt sentences. Nevertheless, under an

inappropriateness, manifestly unreasonable, or simple reasonableness test, Downs's sentence passes muster.

We have held that "a sentence of three years is proportioned to the nature of the offense of criminal contempt[.]" *Gardner*, 713 N.E.2d at 348. In *Gardner*, the defendant, though given use immunity, refused to testify against his fellow inmate in a drug case. We compared criminal contempt with perjury and obstruction of justice, both class D felonies with maximum sentences of three years. In altering the eleven-and-one-half-year sentence originally imposed by the trial court, we observed that a three-year sentence was "adequate both to vindicate the authority of the trial court and to punish Gardner for his contempt." *Id.*

Here, after due consideration, we do not find the two-year sentence inappropriate or unreasonable given the commission of direct contempt in a murder trial coupled with Downs's substantial criminal history.[4] To the contrary, the two-year sentence seems appropriate and reasonable given the particular offense and the character of the offender. *See In re Cudworth*, 815 N.E.2d 1019, 1023 (Ind.Ct.App.2004) (affirming trial court's sentence for defendant's refusal to testify, which had a "disruptive effect" on trial and was an "affront to the dignity of the trial court."). Accordingly, we will not revise Downs's sentence for contempt.

### III. Denial of Petition for Post-conviction Relief

In challenging the denial of his petition for post-conviction relief, Downs contends that his counsel was ineffective for a variety of reasons. Downs asserts that his counsel ignored his "mental health issues,"

which were caused by witnessing Jaynes's murder. Appellant's Br. at 17. Downs claims that he was "still very depressed ... couldn't sleep very good ... having flashbacks" when he was presented with and signed the plea agreement. *Id.* at 18. In addition, Downs argues that defense counsel had limited contacts with him and "was effectively unavailable to ... provide an explanation for the basics of the matter, including questions of the case against him." *Id.* at 17. Finally, he faults defense counsel for failing to file a motion to suppress. Downs maintains that such a motion would have been granted, which in turn would have led to dismissal of the charges against him. Further, Downs contends, "[t]here is a reasonable probability that the outcome would have been significantly different, but for the actions of the trial counsel." *Id.* at 19.

Our standard of review is well settled.

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. When appealing from the denial of post-conviction relief, the petitioner stands in the position of appealing from a negative judgment. On review, we will not reverse the judgment unless the evidence as a whole unerringly and unmistakably leads to a conclusion opposite that reached by the post-conviction court. Further, the post-conviction court in this case entered findings of fact and conclusions of law in accordance with Indiana Post–Conviction Rule 1(6). A post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mis-

---

**4.** Downs's criminal history consists of convictions for several violent crimes that he committed in Florida. The court's sentencing order details the numerous convictions, which include armed robbery, aggravated assault, kidnapping, aggravated battery with a firearm, and attempted robbery with a firearm. *See* Appellant's App. at 14.

take has been made. In this review, findings of fact are accepted unless clearly erroneous, but no deference is accorded conclusions of law. The post-conviction court is the sole judge of the weight of the evidence and the credibility of witnesses.

*Fisher v. State,* 810 N.E.2d 674, 679 (Ind. 2004) (citations and quotation marks omitted).

We review claims of ineffective assistance of trial counsel under the two-part test articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Wentz v. State,* 766 N.E.2d 351, 360 (Ind.2002).

> First, the defendant must show that counsel's performance was deficient. This requires a showing that counsel's representation fell below an objective standard of reasonableness, and that the errors were so serious that they resulted in a denial of the right to counsel guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defendant. To establish prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* (citations omitted). Our supreme court has instructed that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Williams v. State,* 706 N.E.2d 149, 154 (Ind.1999) (citation and quotation marks omitted).

■ Regarding Downs's "mental health issues," we disagree that his counsel ignored them. To the contrary, defense counsel commissioned a private pre-sentence investigative report that detailed various mitigating circumstances. Attached to the report was a nineteen-page report by a psychologist containing a detailed analysis of her clinical testing and therapy sessions with Downs. Defense counsel filed this pre-sentence memorandum with the trial court before the sentencing hearing, and the court weighed it. To the extent Downs argues that his state of mind resulted in his guilty plea being involuntary or unknowing, we are likewise unconvinced. At the commencement of his guilty plea, Downs was asked if he suffered from any mental or emotional disability. He responded in the negative. Further, Downs was a literate, middle-aged machinist who was not facing his first brush with the law. Given these circumstances, Downs has failed to demonstrate that defense counsel performed deficiently regarding Downs's mental state or knowledge. Moreover, defense counsel did not testify. As such, we may infer that Downs's former attorney would not have testified in support of the ineffectiveness allegations Downs now asserts. *See Culvahouse v. State,* 819 N.E.2d 857, 863 (Ind. Ct.App.2004) (citing *Dickson v. State,* 533 N.E.2d 586, 589 (Ind.1989), for proposition that when counsel is not called as witness to testify in support of petitioner's arguments, post-conviction court may infer that counsel would not have corroborated petitioner's allegations), *trans. denied.*

■ Moreover, Downs has not shown that his counsel was "effectively unavailable" to him. By his own admission, Downs had at least four contacts with his counsel prior to signing the plea agreement. As previously noted, defense counsel arranged for a pre-sentence investigation and an accompanying psychological report. Other than Downs's bald assertions, there is no evidence that defense counsel failed to consult with him. While there was one instance of misinformation

(regarding the sentence), it was clarified before the plea agreement was signed.

■ Finally, we address the motion to suppress issue. On February 2, 2004, approximately seven months after Downs pled guilty, Collins filed a motion to suppress evidence obtained during the search of the house in which Collins and Downs lived. The motion alleged:

The search warrant was invalid because:

A) It was based upon information illegally acquired (and thus tainted) incorrectly relying upon a "protective sweep" entry into the residence; and,

B) The search warrant was obtained telephonically without properly complying with the requirements of Ind.Code § 35-33-5-8.

Appellant's App. at 33. The Appellant's Appendix includes no indication of how the State responded, if at all, to the motion to suppress. That same day, the Collins court granted the motion, finding that no "reliable audio tape" was presented for the court to determine that probable cause was based upon accurate and reliable evidence. Id. at 37. Despite the suppression of the evidence, a jury eventually convicted Collins of murder, criminal confinement, abuse of a corpse, arson, pointing a firearm, pointing a firearm by a serious violent felon, and being a habitual offender. See Collins, at 674. Collins received a sentence of 144 years' incarceration. See id. at 674 n. 8.

In light of the severity of Collins' various other crimes, what must have been convincing additional evidence to support the convictions, and the fact that Collins' motion to suppress was granted on the same day it was filed, we would not be surprised if the State failed to vigorously oppose the motion to suppress in Collins' case. However, that would not necessarily have been the situation in Downs's case. Downs stresses that the same core facts were involved in Collins' case and in his own. Hence, Downs asserts that had his defense counsel filed a motion to suppress, it too would have been granted. However, important distinctions exist. Police were responding to Downs's call when they arrived at his house. Tr. at 62–64. Upon speaking to Downs outside his house, the police learned that Collins lived in the house (which had multiple entrances), had just killed someone, and was missing, and that a child was inside. Fearing that Collins was dangerous and might return home, police wished to enter Downs's house to search for Collins. Downs offered to put his Rottweilers in the bathroom so police could search. Id. at 64. During their walk-through, police saw in plain view instrumentalities and precursors of methamphetamine. A more thorough search uncovered the weapon. Presented with these facts, a trial court could certainly have determined that Downs had consented to the initial search and that the search was further warranted as a protective sweep. The court could also have determined that upon seeing the instrumentalities and precursors in plain view, police then had probable cause to arrest. The more extensive search could then have been proper to preserve evidence. See VanWinkle v. State, 764 N.E.2d 258, 267 (Ind.Ct.App.2002) (concluding that protective sweep and preservation of evidence were valid justifications for entry and search), trans. denied. That is to say, Downs has not met his burden to demonstrate that his counsel's failure to file a motion to suppress was deficient performance. Downs has not shown that such a motion would have been granted and thus

that the result would have been different. Accordingly, his ineffectiveness claims fail. The evidence as a whole does not unerringly and unmistakably lead to a conclusion opposite that reached by the post-conviction court, hence we will not reverse the denial of Downs's petition for post-conviction relief.

Affirmed.

RILEY, J., and ROBB, J., concur.