**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JOHN ANDREW GOODRIDGE**
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ANTHONY ROBERT KONSOER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 82A05-1301-CR-30 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH CIRCUIT COURT
The Honorable Kelli E. Fink, Judge
Cause No. 82C01-1204-FA-509

**August 26, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

## Case Summary and Issue

Anthony Robert Konsoer appeals his conviction for dealing in methamphetamine as a Class A felony. Konsoer presents one consolidated and restated issue for review: whether the trial abused its discretion in admitting certain evidence. Concluding that the trial court did not abuse its discretion, we affirm.

## Facts and Procedural History

In April 2012, Evansville Police Detective McDonald was investigating an anonymous tip that Konsoer was manufacturing methamphetamine at a house on Cherry Street. A car that Detective McDonald knew to belong to Konsoer was parked in front of the house. At some point, Detective McDonald saw Konsoer go to his car, take out a small black suitcase, and go back into the house. Detective Fields joined Detective McDonald on the surveillance, and a couple of hours later, Konsoer left the house. Konsoer was soon stopped by Officers Mattingly and Ward, who had been told to stop Konsoer if a reason presented itself. The officers stopped Konsoer for failing to signal a turn. On his way to the stop, Detective McDonald drove slowly by the house on Cherry Street and could smell ether. Detective McDonald is a certified DEA clandestine lab investigator, and knew that the smell of ether is a common indicator of a clandestine methamphetamine lab.

At the traffic stop, Konsoer was asked to step out of his car because possible weapons were visible inside the car. Once Konsoer was outside the car, Officer Mattingly detected the odor of ether on Konsoer. Detective McDonald arrived at the stop, and briefly spoke to Konsoer. Detective McDonald asked Konsoer whether any of the items at the Cherry Street house belonged to the residents, the Goodmans. Konsoer

replied that anything the detective found there would not belong to the Goodmans. Detective McDonald and Officer Ward then went back to the house on Cherry Street to conduct a knock and talk.

The men approached the house from different directions, and both of them smelled ether only when they were near the house that Konsoer had come from. They knocked on the door, and David Goodman stepped outside and quickly shut the door behind him. They asked to speak to David's wife, Carol Goodman, as well. When David opened the door to go inside to get Carol, the smell of ether became much stronger. Detective McDonald knew that ether is highly flammable and so, due to exigent circumstances, Detective McDonald and Officer Ward performed a protective sweep of the house. In doing so, they noticed items in plain view that were consistent with manufacturing methamphetamine. Detective McDonald relayed this information to Officer Mattingly, who arrested Konsoer and searched him incident to arrest. During the search, Officer Mattingly found a bag on Konsoer's person, containing what was later confirmed to be methamphetamine. Following the protective sweep, David gave written consent for officers to search the house and gave a voluntary statement. David stated that Konsoer asked him if he could use the house to make methamphetamine in exchange for some of the finished product, and David volunteered that they still had approximately one gram of methamphetamine from Konsoer. During a search of the house, a team found the small black suitcase that Detective McDonald had seen Konsoer bring into the house, along with an array of items indicating that multiple batches of methamphetamine had been made at the house, and a venting system in the kitchen that routed to the attic via a hole cut in a ceiling closet.

3

Later that same month, Konsoer was charged with count I, manufacturing methamphetamine; and count II, possession of methamphetamine, with a weight of three grams or more, with intent to deliver. In June 2012, Konsoer filed a motion to suppress evidence obtained from "a warrantless search and seizure and an un-Mirandized interrogation." Appendix at 20. After a hearing on the motion to suppress, the court denied the motion in August 2012. A jury trial was held in November 2012, and the jury returned verdicts of not guilty on count I and guilty as charged on count II, as a Class A felony. In December 2012, the court sentenced Konsoer to thirty years executed. This appeal followed.

## Discussion and Decision

### I. Standard of Review

When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and we will only reverse the ruling upon a showing of abuse of discretion. Gibson v. State, 733 N.E.2d 945, 951 (Ind. Ct. App. 2000). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. Id. We consider the evidence most favorable to the trial court's ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. Id.

### II. Admission of Evidence

Konsoer first challenges the admission of evidence relating to the methamphetamine that was found on Konsoer's person during the search incident to his arrest. Konsoer argues that the duration of the traffic stop made it unconstitutional and thus that any evidence seized was inadmissible.

4

The Fourth Amendment to the United States Constitution protects "an individual's privacy and possessory interests by prohibiting unreasonable searches and seizures." Howard v. State, 862 N.E.2d 1208, 1210 (Ind. Ct. App. 2007). The Fourth Amendment's protections against unreasonable searches and seizures have been extended to the states through the Fourteenth Amendment. Harper v. State, 922 N.E.2d 75, 79 (Ind. Ct. App. 2010), trans. denied. The safeguards of the Fourth Amendment extend to brief investigatory stops of people or vehicles that fall short of traditional arrest. Id. (citing Terry v. Ohio, 392 U.S. 1, 9 (1968)). However, under Terry, officers are permitted to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause," as long as the reasonable suspicion is supported by more than unparticularized suspicions. Id. (citation omitted). Additionally, the United States Supreme Court has held that the subjective intentions of an officer play no role in the reasonableness of a traffic stop. Whren v. United States, 517 U.S. 806, 813 (1996). Therefore, pretextual stops such as this one, where the officer's real motive is something other than the infraction for which the defendant was stopped, are not inherently illegal. There are limits, however, to the duration and scope of pretextual stops. Once the purpose of the initial stop has been completed, an officer may not further detain the vehicle "unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention." Harper, 922 N.E.2d at 79 (citation omitted).

Testimony from the officers who stopped Konsoer indicated that the stop lasted between fifteen and twenty minutes, and that a normal traffic stop takes between ten and

twenty minutes.  The officers also testified that they did not take any measures to prolong the stop beyond what was needed for the traffic stop, and that a citation had not yet been issued when they were told by Detective McDonald to arrest Konsoer.  In challenging the reasonableness of the duration of the stop, Konsoer points only to the run report, which indicates the time that the call was received, and the time, about an hour later, that the wrecker was called.  Konsoer argues that, despite the officers' testimony, the stop must have lasted longer than fifteen to twenty minutes.  We do not judge witness credibility. Here, a claim that the stop lasted fifteen to twenty minutes is not incredible.[1]  Konsoer was pulled over only five or six blocks from the Cherry Street house, and after speaking briefly with Konsoer, Detective McDonald returned to the house, smelled ether, and soon thereafter performed a protective sweep of the house.  Precursors and instruments related to methamphetamine manufacture were in plain view when Detective McDonald performed the sweep, and at that point the police had probable cause to arrest Konsoer. Downs v. State, 827 N.E.2d 646, 655 (Ind. Ct. App. 2005), trans. denied.  The trial court did not abuse its discretion in admitting evidence relating to the methamphetamine that was found on Konsoer during the search incident to his arrest.

Konsoer also challenges the admission of statements he made to Detective McDonald after he was stopped, indicating that anything the detective found in the Goodmans' house would not belong to the Goodmans.  However, when detectives returned to the house on Cherry Street, they determined that the odor of ether was

---

[1]  The State also argues that, in addition to the stop itself being reasonable, officers had reasonable suspicion to detain Konsoer for longer than allowed by the traffic infraction alone, because the combination of the anonymous tip that Konsoer was manufacturing methamphetamine, the odor of ether emanating from the house as Detective McDonald drove to the traffic stop, and the odor of ether on Konsoer himself indicated that criminal activity may have been "afoot."  We agree that this would likely be sufficient for reasonable suspicion to allow an investigation beyond the traffic stop itself; however, because we have determined that duration of the stop was not unreasonable, we do not analyze reasonable suspicion supporting an investigation beyond the traffic stop.

6

emanating from the house that Konsoer had just left. Our supreme court has held that because of the volatile nature of methamphetamine labs, "probable cause based largely on observation of odors emanating from the home, presents exigent circumstances permitting a warrantless search." Holder v. State, 847 N.E.2d 930, 939-40 (Ind. 2006). Therefore, detectives did not need Konsoer's statement to do a protective sweep of the house; and following the protective sweep, David consented to a search of the house. Because the search of the house was valid without Konsoer's statement at the stop, and because he was convicted only of the charge related to the methamphetamine that was found on his person following his arrest (and was not convicted of the charge relating to manufacture of methamphetamine, to which his statement would have been related), we do not reach the question of whether his un-Mirandized statement taken at the beginning of the traffic stop was admissible. Any error in admitting that statement was harmless.

## Conclusion

Concluding that the trial court did not abuse its discretion in the admission of evidence, we affirm.

Affirmed.

RILEY, J., and KIRSCH, J., concur.