Melissa JONES, Appellant–Respondent,

v.

STATE of Indiana, Appellee–Petitioner.

No. 49A02–0510–CR–1018.

Court of Appeals of Indiana.

May 4, 2006.

Rehearing Denied June 8, 2006.

Transfer Denied Aug. 17, 2006.

Joel M. Schumm, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Robyn M. Williamson, Kelly A. Miklos, Deputy Attorneys General, Indianapolis, for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Appellant–Respondent Melissa Jones ("Jones") appeals the judgment of the trial court finding her in contempt of court for refusing to appear at a pre-trial deposition after having been subpoenaed to do so. Jones also challenges the trial court's imposition of a two-hundred-day "flat" sentence. We affirm.[1]

### Issues

Jones raises three issues, which we restate as:

I.   Whether Jones received effective assistance of trial counsel;

II.   Whether the evidence is sufficient to support the trial court's finding of contempt; and

III.   Whether Jones's sentence is unreasonable or inappropriate under Indiana Code Section 35–50–6–3(a) and Indiana Appellate Rule 7(B).

### Facts and Procedural History

On October 20, 2003, the State charged Michael Mason ("Mason") with murder and carrying a handgun without a license as a Class A misdemeanor, resulting from the death of Antione Mitchell. During the investigation of the death, Indianapolis Police Detective Michael Mitchell ("Detective Mitchell") interviewed Jones—a relative of Mason—the only witness who could identify Mason as the shooter. Initially, Jones gave a statement and signed some photo arrays.

On September 30, 2004, Detective Mitchell personally served Jones with a subpoena to appear for a deposition on October 7, 2004. Detective Mitchell instructed Jones "not to miss the deposition," even if "something comes up," because she does not "have the right not to show up." Tr. at 28. He further advised her that "if she needed a ride, to get a hold of [him.] [He] would come get her." *Id.* At that time, according to Detective Mitchell, Jones did not indicate that she was afraid of testifying at the deposition or that she had received threats from a gang with which the victim was allegedly affiliated.

On October 7, 2004, Jones failed to appear for the deposition. In her words: " . . . well, [Detective Mitchell] ain't put me in no protective custody—I was in fear of my life. That's why I didn't show up for the dep [sic]—that's why I didn't show up to nothin' . . ." *Id.* at 33.

The following day, a bench warrant was issued for Jones's arrest. On October 13, 2004, Mason filed a motion to exclude the testimony of the State's material witnesses, including Jones, because, on three separate occasions, they had failed to appear for their depositions.[2] Thereafter, on

---

1. We heard oral argument in this case on April 13, 2006, at Silver Creek High School in Sellersburg, Indiana. We thank counsel for their advocacy and extend our appreciation to Silver Creek High School for hosting the oral argument.

2. The record demonstrates that Jones's deposition was rescheduled on two separate oc-

October 14, 2004, Jones left two telephone messages for Deputy Prosecutor Janna Skelton ("Skelton") regarding the warrant.

On January 20, 2005, the State filed a motion to continue Mason's jury trial. In relevant part, this motion provides:

6. The State of Indiana *cannot* go forward with its case without Ms. Jones. The State has been making a good faith effort to find Ms. Jones, but has not yet been able to locate her.

7. The State is requesting additional time to locate Ms. Jones so that we may proceed on these charges.

8. Defendant Mason requested a speedy trial on December 15, 2004. The 70th day is February 23, 2005.

Appellant's App. at 42 (emphasis in original). Because of Mason's speedy trial right, however, the trial court denied the State's motion for continuance. Subsequently, the State filed a motion to dismiss the charges against Mason, which the trial court granted.

On October 4, 2005, in a separate action, the State charged Jones with indirect contempt, under Indiana Code Sections 34–47–3–1 and 34–47–3–5, for her failure to appear at the October 7th deposition. On October 14, 2005, the trial court conducted a contempt hearing, at which time Jones admitted that she had failed to appear for the deposition, but argued that, in so doing, she did not willfully disobey the process of the court. Rather, Jones explained that she did not appear because she feared for her life.[3] On October 18, 2005, the trial court found Jones in indirect contempt and

ordered her to serve "200 days flat in the Marion County Jail," with the sentence to end on April 12, 2006. *Id.* at 26. On the order, the trial judge wrote: "Do Not Release Early!!" *Id.* Jones now appeals.

## Discussion and Decision

### I. Effective Assistance of Trial Counsel

On appeal, Jones first argues that she received ineffective assistance of trial counsel. Effectiveness of counsel is a mixed question of law and fact. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). We evaluate Sixth Amendment claims of ineffective assistance under the two-part test announced in *Strickland. Id.* To prevail on an ineffective assistance of counsel claim, a defendant must demonstrate both deficient performance and resulting prejudice. *Dobbins v. State,* 721 N.E.2d 867, 873 (Ind.1999) (citing *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052). Deficient performance is that which falls below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *see also Douglas v. State,* 663 N.E.2d 1153, 1154 (Ind.1996). Prejudice exists when a claimant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052; *see also Cook v. State,* 675 N.E.2d 687, 692 (Ind.1996). The two prongs of the *Strickland* test are separate and independent inquiries. *Strickland,*

casions prior to the October 7th date in question. It was rescheduled the first time because Jones was unable to attend and, the second time, because an attorney had withdrawn from the case.

3. At the contempt hearing, for example, Jones testified that, upon being served with the sub-

poena, she asked Detective Mitchell if she could be placed in protective custody because she was "in fear of [her] life." Tr. at 33. She also testified that, in September, she attempted to meet with, and convey her fears to, Skelton, but that Skelton was in court and never contacted Jones.

466 U.S. at 697, 104 S.Ct. 2052. Thus, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.*

In the present case, Jones argues that her trial counsel rendered ineffective assistance because counsel failed to object to: (1) Skelton's role as both witness and prosecutor, in violation of Indiana Rule of Professional Conduct 3.7; and (2) the trial court's partiality as evidenced by its questioning of Jones. We separately address these arguments.

## A. Dual Role

■ Jones maintains that she received ineffective assistance of trial counsel because her counsel failed to object to Skelton's dual role as prosecutor and witness, pursuant to Indiana Rule of Professional Conduct 3.7.[4] The record demonstrates that, at the contempt hearing, the State called Skelton as its first witness. At that time, the trial court informed Skelton that she would have to withdraw as prosecuting attorney and allow Jennifer Haley ("Haley") to proceed as prosecutor. Haley then proceeded to examine Skelton as a witness. Once the direct examination was complete, however, Skelton resumed her role as prosecutor and conducted the direct examination of Detective Mitchell, as well as the cross-examination of Jones.

Assuming arguendo that Jones's trial counsel performed deficiently by failing to object to Skelton's role as both witness and advocate, Jones has not shown a reasonable probability that the result of the proceedings would have been different had Skelton not been allowed to act as either a witness or a prosecutor. *See Strickland,* 466 U.S. at 694, 104 S.Ct. 2052. In relevant part, Skelton, as witness, only testified that: (1) the deposition scheduled for January 23, 2004 was postponed because Jones was unable to attend; (2) Detective Mitchell personally served Jones with the subpoena to appear at the October 7 deposition; (3) on October 14, 2004, Jones left Skelton two voice mail messages, indicating that she was aware of the bench warrant; and (4) on January 28, 2005, Skelton and Jones discussed the bench warrant and the need for Jones to turn herself into the police. At the contempt hearing, Jones admitted that she was incarcerated on a separate matter on January 23, 2004, and, further, that she had received the subpoena in question but failed to appear for the deposition on October 7, 2004. Jones testified, however, that she never spoke to Skelton on October 14, 2004 or January 28, 2005, regarding the bench warrant. This discrepancy in testimony does not establish prejudice for *Strickland* purposes. As Jones aptly recognizes in her reply brief, the events that occurred after the contempt, i.e., the conversations concerning the bench warrant, are "simply not relevant to the contempt finding, which requires proof of willful disobedience of a court order." Appellant's Reply Br. at 4.

Moreover, in light of Detective Mitchell's testimony, which, for the most part, comprises our Statement of Facts, Jones has failed to demonstrate a reasonable probability that the result of the contempt proceedings would have been different had Skelton not acted as both a witness and

---

4. Indiana Rule of Professional Conduct 3.7 provides, in part:
   (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
   (1) the testimony relates to an uncontested issue;
   (2) the testimony relates to the nature and value of legal services rendered in the case; or
   (3) disqualification of the lawyer would work substantial hardship on the client.

prosecutor at the contempt hearing. Accordingly, Jones has failed to show that she was prejudiced by her trial counsel's alleged deficient performance.

### B. *Trial Court's Impartiality*

■ Jones also contends that her trial counsel rendered ineffective assistance by failing to object to the trial court's partiality as evidenced by its questioning of Jones. During her direct examination, Jones testified that, in February of 2003, she started receiving threatening telephone calls because of her involvement in the State's prosecution of Mason. The following exchange ensued:

A Because I was scared of things around my house.

Q Well what's the "thing"—we don't know...

A Like people—like people knockin' on my door and runnin'.... People knockin' on my doors; gettin' on my phone...and threatenin' to kill me and my babies.

Q So what did you do.

A I left...

THE COURT: Did you call the police?

THE WITNESS: I called the police and...

THE COURT: You gave a police report...

THE WITNESS: I called the police and I told the police can they watch me walk out to the car...

THE COURT: Okay—(indiscernible) police report....

DIRECT (RESUMES):

Q To go to a cab—right...

A To go to the cab...

THE COURT: We'll check that out....

A To go to the cab....

Q Okay, so now—now where...

THE COURT: What was your address...

THE WITNESS: 5075 East Walnut...

DIRECT (RESUMES):

Q And when was that...

THE COURT: And what was that phone number—hold on, [Defense Counsel]...

[DEFENSE:] What was the street....

THE COURT: ...we're going to check the police report...

[DEFENSE:] Okay...

THE COURT: What's the name...the address....

THE WITNESS: My name—Melissa Jones...

THE COURT: No—I mean—your address, that you made the phone calls from.

THE WITNESS: 5075 East Walnut....

THE COURT: And what's the phone number...

THE WITNESS: Man—what's the phone number....317...oh—35—oh, God, what's the phone number...

THE COURT: All right, we'll check the address...go ahead, [Defense]...

Tr. at 39–41.

■ Jones asserts that trial counsel should have objected to these comments because they "not only expressed disbelief of Jones' testimony but also suggested a desire to independently investigate her testimony, which is the duty of the prosecutor and not an impartial fact-finder." Appellant's Br. at 16. To establish ineffective assistance for counsel's failure to object, a defendant must establish that the trial court would have sustained the objec-

tion had one been made and that he or she was prejudiced by the failure to object. *See Wrinkles v. State,* 749 N.E.2d 1179, 1192 (Ind.2001), *cert. denied,* 535 U.S. 1019, 122 S.Ct. 1610, 152 L.Ed.2d 624 (2002).

Jones argues that an objection would have been sustained "because the trial court's questions impeached and discredited not just any witness-but the Respondent whose liberty was most at stake." Appellant's Br. at 16. To support this contention, Jones relies upon our Supreme Court's decision in *Abernathy v. State,* 524 N.E.2d 12, 14–15 (Ind.1988). There, during the defendant's jury trial for rape, criminal deviate conduct, and child molesting, the trial judge asked certain questions solely for the purpose of impeaching or discrediting the witnesses. At one point, the trial judge even "turned his chair so that he sat with his back to the witness and placed his feet on the wall in what defense counsel interpreted as an attitude of disbelief or disinterest." *Id.* at 14. In reversing the subsequent convictions and remanding for a new trial, the *Abernathy* Court held:

> The questions did not clarify facts for the jury; they indicated the judge's opinion of the witness' credibility. The jury must be allowed to form its own opinion on the credibility of the witnesses free of any influence by the judge's beliefs or opinions.
>
> [The defendant's] defense hinged on the distinction between consensual intercourse and forcible rape. The testimony of [the witnesses] was directed to this issue. By suggesting he disbelieved the witnesses, the judge necessarily indicated his disbelief of [the defendant's] defense. His opinion of any exculpatory evidence was readily apparent to the jury. Because of the deference which juries accord the judge's opinions, this

lack of neutrality was detrimental to [the defendant's] defense.

*Id.* at 15.

▮ However, *Abernathy* is inapposite to the present action, in part because it involved a trial judge's comments in a jury trial, not a bench trial. It is true, as Jones contends, that a trial before an impartial judge is an essential element of due process. *Timberlake v. State,* 690 N.E.2d 243, 256 (Ind.1997), *reh'g denied, cert. denied,* 525 U.S. 1073, 119 S.Ct. 808, 142 L.Ed.2d 668 (1999). However, a judge's discretion to question witnesses is greater in bench trials than in trials before juries. *Taylor v. State,* 530 N.E.2d 1185, 1187 (Ind.1988). In a bench trial, like the one at issue, the trial judge in his or her discretion may ask questions of a witness "to aid in the fact-finding process as long as it is done in an impartial manner and the defendant is not prejudiced." *Id.* (quotations and citations omitted).

Here, the judge's questions regarding the police report were intended to aid in the fact-finding process. The judge was merely clarifying whether a police report had been completed for the alleged threatening incidents in question. Further, the judge's questions were asked in an impartial manner and, thus, the respondent was not prejudiced. That the judge reiterated a question or two or attached some importance to a particular response does not, of itself, prejudice the defendant. In the present case, the trial judge did not err in questioning the witness and, thus, had trial counsel objected on grounds of impartiality, such objection would not have been sustained. Accordingly, Jones has failed to demonstrate that her trial counsel rendered ineffective assistance of counsel.

## II. Contempt Finding

▮ Jones next contends that the trial court abused its discretion by finding her in indirect contempt because the evi-

dence is insufficient to demonstrate that she willfully and defiantly disobeyed a court order, i.e., the subpoena. The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. *Williams v. State ex rel. Harris*, 690 N.E.2d 315, 316 (Ind.Ct.App.1997); *see also Jackson v. State*, 644 N.E.2d 607, 608 (Ind.Ct.App. 1994), *trans. denied*. We will reverse the trial court's determination only if the court has abused its discretion. *Williams*, 690 N.E.2d at 316. A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law. *See id.*

Contempt proceedings may be generally categorized as civil or criminal, according to the nature and purpose of the sanction imposed. 6 I.L.E. *Contempt* § 5 (2000); *see also In re Contempt of Wabash Valley Hosp., Inc.*, 827 N.E.2d 50, 61 (Ind. Ct.App.2005). A civil contempt is a violation of a court order resulting in a proceeding for the benefit of the aggrieved party. *Nat'l Educ. Ass'n v. South Bend Cmty. Sch. Corp.*, 655 N.E.2d 516, 522 (Ind.Ct.App.1995). As such, any type of penalty in a civil contempt proceeding must be coercive or remedial in nature. *Id.* By contrast, a criminal contempt is an act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute. *State v. Heltzel*, 552 N.E.2d 31, 34 (Ind.1990). Accordingly, a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party. *Int'l Union, UMWA v. Bagwell*, 512 U.S. 821, 826–28, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994). The contempt in this case was clearly criminal in nature, inasmuch as the sanction did not abate upon compliance with the trial court's order and it benefitted the State as a whole.

Contempt also may be direct or indirect. *In re Contempt of Wabash Valley Hosp.*, 827 N.E.2d at 61. Direct contempts, on the one hand, involve actions in the presence of the court, such that the court has personal knowledge of them. *Pryor v. Bostwick*, 818 N.E.2d 6, 12 (Ind.Ct.App.2004). Indirect contempts, on the other hand, undermine the orders or activities of the court but involve actions outside the trial court's personal knowledge. *Williams*, 690 N.E.2d at 317. Here, the contempt at issue is indirect, because Jones's failure to appear at the deposition took place away from the courtroom and outside the personal knowledge of the trial court.

Indeed, Indiana Code Section 34–47–3–1 provides,

A person who is guilty of any willful disobedience of any process, or any order lawfully issued:

(1) by any court of record, or by the proper officer of the court;

(2) under the authority of law, or the direction of the court; and

(3) after the process or order has been served upon the person;

is guilty of an indirect contempt of the court that issued the process or order.

Thus, the willful and intentional disobedience of the orders of a trial court may constitute indirect criminal contempt. *See In re Crumpacker*, 431 N.E.2d 91, 97 (Ind. 1982). The determination of whether an alleged contemptuous act was committed with the intent to show disrespect or defiance is a factual question to be decided by the court after hearing all of the evidence. *In re Hatfield*, 607 N.E.2d 384, 385 (Ind. 1993). What is more, our Supreme Court has held that the respondent has the burden of establishing that her failure to obey

the order was not willful. *Id.; see also Hays v. Hays,* 216 Ind. 62, 66–67, 22 N.E.2d 971, 973 (1939).

Here, Jones argues that she did not willfully disobey the subpoena, but rather, failed to appear at the deposition as a result of fear. However, apart from her self-serving comments, the record is devoid of any evidence that Jones was receiving threats or in fear for her life. Detective Mitchell testified, unequivocally, that Jones had not conveyed any such fears to him. To the extent that Detective Mitchell's and Jones's testimonies conflict, we will not determine credibility, much less find an abuse of discretion. Further, there is no evidence that Jones attempted to continue the October 7 deposition, as she had successfully done in the past. Nor did she contact anyone to explain her absence or attempt to reschedule the deposition. In light of this evidence, we cannot say that the trial court abused its discretion by determining that Jones willfully disobeyed the subpoena to appear and finding Jones in indirect contempt of court.

### III. Sentence

▮ Lastly, Jones argues that the trial court erred when it imposed upon her a two-hundred-day "flat" sentence. In particular, Jones asserts that, because the contempt proceeding in question was held without a jury, the maximum sentence that the trial court could have imposed was one hundred and eighty days, pursuant to *Holly v. State,* 681 N.E.2d 1176, 1178 (Ind.Ct. App.1997). With this contention, the State does not disagree. *See* Appellee's Br. at 6; *see also Holly,* 681 N.E.2d at 1178 (noting that sentences exceeding six months may not be imposed absent a jury trial or waiver thereof). Next, Jones maintains that the "flat" sentence deprived her of good time credit, under Indiana Code Section 35–50–6–3(a) and the United States and Indiana Constitutions. Jones further con-

tends that her sentence is inappropriate under Indiana Appellate Rule 7(B).

▮ In response, and because Jones's sentence was commuted to time served on January 6, 2006, the State urges that these arguments are moot. An issue is deemed moot when it is no longer "live" or when the parties lack a legally cognizable interest in the outcome of its resolution. *See In re Utley,* 565 N.E.2d 1152, 1154 (Ind.Ct.App.1991). Accordingly, where the principal questions at issue cease to be of real controversy between the parties, the " 'errors assigned become moot questions and this court will not retain jurisdiction to decide them.' " *Id.* (quoting *Bartholomew County Hospital v. Ryan,* 440 N.E.2d 754, 757 (Ind.Ct.App. 1982)). Stated differently, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination "where absolutely no change in the status quo will result." *In re Utley,* 565 N.E.2d at 1154 (quotations omitted). However, there is an exception to the general rule. A public interest exception may be invoked upon the confluence of three elements: (1) the issue involves a question of great public importance; (2) the factual situation precipitating the issue is likely to recur; and (3) the issue arises in a context which will continue to evade review. *In re Marriage of Stariha,* 509 N.E.2d 1117, 1123 (Ind.Ct.App.1987).

▮ The challenged sentence falls under the public interest exception to the mootness doctrine. Here, Jones initially received a "flat" sentence of two hundred days, but that sentence was later commuted to time served before her case could be reviewed by this Court. The questions of whether good-time credit applies to a sentence for criminal contempt and, further, whether a contemnor's sentence is reasonable are ones of significant import, which

may continue to evade review. *But see Andrews v. State,* 505 N.E.2d 815, 831 (Ind.Ct.App.1987) (holding that any question as to the applicability of good-time credit to a contempt sentence, which was fully served, is moot). Accordingly, we now separately address Jones's sentencing claims of error.

### A. Good–Time Credit

■ In challenging the propriety of her sentence, Jones first maintains that the trial court erred by imposing a "flat" sentence, thereby depriving her of the opportunity to earn good-time credit. Indiana Code Section 35–50–6–4 provides that "[a] person *imprisoned for a crime* or imprisoned awaiting trial or sentencing is initially assigned to Class I." (Emphasis added). That person may be reassigned to Class II or Class III if he or she violates a rule imposed by the Department of Correction; a rule of the penal facility in which he or she is imprisoned; or a rule or condition of a community transition program. *See* Ind.Code § 35–50–6–4. Indiana Code Section 35–50–6–3(a) provides: "A person assigned to Class I earns one (1) day of credit time for each day he is imprisoned for a crime or confined awaiting trial or sentencing."

■ The purpose of the legislature in enacting "good time" credit statutes was to encourage inmates of penal institutions to behave well while confined, to improve their morale, and thus to help the prison authorities to maintain order and control. *See State v. Eckhardt,* 687 N.E.2d 374, 376 (Ind.Ct.App.1997) (citing *Dunn v. Jenkins,* 268 Ind. 478, 485, 377 N.E.2d 868, 873 (1978)). Although not specified in Indiana

Code Section 35–50–6–3, our Supreme Court has defined credit time as "a statutory reward for a lack of conduct that is in violation of institutional rules. It is earned toward release on parole for felons, and does not diminish the fixed term or affect the date on which a felony offender will be discharged." *Boyd v. Broglin,* 519 N.E.2d 541, 542 (Ind.1988), *reh'g denied; see also Campbell v. State,* 714 N.E.2d 678, 682 (Ind.Ct.App.1999), *reh'g denied.*

Here, however, Jones was not imprisoned for a crime as contemplated by Indiana Code Section 35–50–6–4. Rather, she was incarcerated for committing an act of indirect criminal contempt under the civil code, i.e., Indiana Code Section 34–47–3–1. Jones's act of disregarding the subpoena in question was directed against the dignity and authority of the trial court and served to obstruct the administration of justice. As a result, the purpose of the sentence imposed, which the State refers to as a sanction, was to vindicate the authority of the trial court and not to punish for the commission of a criminal act, as defined by the Indiana Legislature and codified in the criminal code. Because Jones was not "imprisoned for a crime," we hold that Indiana Code Sections 35–50–6–3 and 35–50–6–4 do not apply to her sentence for criminal contempt.[5]

### B. Reasonableness of Sentence

■ Jones next argues that her sentence, of which she served approximately one hundred and two days, is unreasonable or inappropriate and should, therefore, be further reduced. Initially we note that before its repeal in 1987, Indiana Code Section 34–4–7–6 limited punishment for contempt to a fine of $500.00 and/or

---

**5.** Moreover, we note that, in at least three instances, the Indiana Supreme Court has refused to apply good time credit to a sentence for contempt. *See, e.g., In re Baars,* 683 N.E.2d 555, 556 (Ind.1997) (holding that those provisions of the law authorizing the diminution of sentence for good time served shall not apply to this sentence); *see also In re Powell,* 658 N.E.2d 572, 574 (Ind.1995); *In re Crumpacker,* 431 N.E.2d 91, 98 (Ind.1982).

imprisonment of no more than three months. *See Downs v. State,* 827 N.E.2d 646, 652 (Ind.Ct.App.2005) (citing *Contempt of Steelman,* 648 N.E.2d 366, 369 (Ind.Ct.App.1995)), *trans. denied.* We have recognized, "in the absence of the statute, the power to punish contempt is limited by reasonableness." *In re Gardner,* 713 N.E.2d 346, 347 (Ind.Ct.App.1999) (citing *Hopping v. State,* 637 N.E.2d 1294, 1297 (Ind.1994), *cert. denied,* 513 U.S. 1017, 115 S.Ct. 578, 130 L.Ed.2d 493 (1994)). In *Hopping,* our Supreme Court noted that punishment for contempt is "generally a matter left to the sound discretion of the trial court" and then applied the "manifestly unreasonable" standard. 637 N.E.2d at 1297–98. Under the manifestly unreasonable standard, a reviewing court did not revise a sentence "authorized by statute" unless it determined that "no reasonable person could find the sentence appropriate given the particular offense and character of the offender." *See id.; see also* Ind. Appellate Rule 7(B) (2002) (repealed effective Jan. 1, 2001; formerly Ind. Appellate Rule 17). Now, however, we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) (2005). However, both the old and the new standards for revising sentences apply to sentences "authorized by statute." Because there is no longer a statute setting out the punishment for contempt, it is unclear whether Appellate Rule 7(B) should apply in reviewing contempt sentences. Nevertheless, under an inappropriateness, manifestly unreasonable, or simple reasonableness test, Jones's sentence of approximately one hundred and two days passes muster.

We have held that "a sentence of three years is proportioned to the nature of the offense of criminal contempt[.]" *Gardner,* 713 N.E.2d at 348. There, the defendant, though given use immunity, refused to testify against his fellow inmate in a drug case. *Id.* The *Gardner* Court compared criminal contempt with perjury and obstruction of justice, both Class D felonies with maximum sentences of three years. *Id.* In altering the eleven-and-one-half-year sentence originally imposed by the trial court, the Court observed that a three-year sentence was "adequate both to vindicate the authority of the trial court and to punish Gardner for his contempt." *Id.*

Here, after due consideration, we do not find Jones's sentence, as commuted, to be inappropriate or unreasonable given her commission of indirect contempt in a murder trial where she was the sole eyewitness. As for Jones's character, we note that she not only failed to appear at her scheduled deposition, but also evaded authorities for approximately one year. Given the particular offense and the character of the offender, Jones's one-hundred-and-two day sentence seems appropriate and reasonable. *See, e.g., In re Cudworth,* 815 N.E.2d 1019, 1023 (Ind.Ct.App.2004) (affirming trial court's sentence for defendant's refusal to testify, which had a "disruptive effect" on trial and was an "affront to the dignity of the trial court."). Accordingly, we will not further revise Jones's sentence for contempt.

For the foregoing reasons, we affirm the trial court's finding of criminal contempt. Because Jones was not afforded a jury trial—or given the chance to waive her right to a jury trial—we note that the trial court improperly sentenced her to a term exceeding one hundred and eighty days. However, inasmuch as the trial court commuted Jones's sentence to time served and, further, because she only served approximately one hundred and two days of

her sentence, we conclude that her sentence was not unreasonable or inappropriate.

Affirmed.

BAKER, J., and NAJAM, J., concur.