**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DANIEL J. VANDERPOOL**
Vanderpool Law Firm
Warsaw, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**LARRY D. ALLEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BOBBY WINE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 85A02-1307-CR-610 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE WABASH CIRCUIT COURT
The Honorable Robert R. McCallen, III, Judge
Cause No. 85C01-1306-MC-431

**February 20, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Bobby Wine appeals the trial court's five findings of contempt. We affirm in part, reverse in part, and remand.

**Issues**

Wine raises four issues, which we consolidate and restate as:

    I.      whether the evidence is sufficient to sustain the five contempt findings;

    II.     whether the trial court failed to follow the appropriate procedure in finding Wine in contempt; and

    III.    whether the sentence for the contempt findings was proper.

**Facts**

The State charged Wine with Class B felony dealing in a controlled substance. During his jury trial, which began on June 11, 2013, Wine was repeatedly disruptive. After his attorney's cross examination of a State's witness, Wine said, "Your Honor, I need to – excuse me, I'm sorry, your Honor." Tr. p. 4. Wine then told the trial court, "I can't do this, Judge." Id. The trial court instructed Wine to "be quiet," and removed the jury from the courtroom. The trial court then told Wine:

> You are not going to interrupt these proceedings again, Mr. Wine. If you have something to bring to my attention you let my bailiff know or something, but don't dare talk or blurt out when the jury is here unless you've been asked a question and you're responding to that question.
>
> If you do that again, I will find you in contempt each and every time you do that. For each and every contempt, you will suffer one hundred and eighty days in the Wabash County Jail. Each and every one, consecutive. I don't wish

2

to do that to you, Mr. Wine. I merely want to have a trial in accordance with the law. You speak through your attorney.

Id. at 5. Wine and the trial court then had a discussion about Wine's attorney's performance, Wine's contention that he did not sell controlled substances, and his desire to represent himself. During the conversation, Wine told the trial court, "I'm not here for your sarcastic stuff. I don't appreciate that being said to me." Id. at 6. The trial court had to admonish Wine to "[s]top talking" and not to "yell." Id. at 7-8. The trial court also concluded that Wine's request to represent himself was not timely. When Wine did not agree with the trial court's instruction to "[s]it there and be quiet," Wine said, "Shame on you." Id. at 14. After again discussing Wine's conduct, the trial proceeded for the day.

On the second day of the trial, Wine again started complaining about his attorney's performance. His complaint centered on whether the charges should have been filed, which the trial court explained was a subject for a motion to dismiss and was not a proper issue for the jury. Wine then began arguing with the trial court, and the trial court informed Wine, "If I have to remove the jury again . . . you're likely to be found in contempt." Id. at 18. When Wine continued arguing with the trial court, the trial court attempted to conduct "a first contempt proceeding" because Wine was being disruptive. Id. Wine refused to take an oath. After Wine continued to argue, the trial court said:

> Don't say another word or I will find you in contempt. I have ruled that the jury will not, under any circumstances, hear anything about what you believe to be a deal offered by the State to either be immune from prosecution or to have charges dismissed. I will not allow that. To the extent you wish to continue to talk about that, I will find you in

contempt. Each and every time you attempt to do that, I will find you in contempt again.

Id. at 19. After a recess, the trial court noted that, during the recess, Wine said, "they will hear me." Id. at 20. The trial court emphasized that "[t]he slightest effort to undermine my order . . . will result in a contempt finding against you." Id.

During the direct examination of a State's witness, Wine said, "Your Honor, at this time I would like to object." Id. at 21. The trial court excused the jury and found Wine in contempt and ordered him to serve 180 days. Wine then argued with the trial court again, and the trial court said, "That's it. That's it. One hundred and eighty days. Now I'm gonna bring the jury back in." Id. at 23. Wine responded, "Well, he better start doing his job," referring to his attorney. Id. The trial court told Wine to stop talking, but Wine continued and said, "Well - -." Id. The trial court then found him in contempt a second time and ordered him to serve another 180 days. Wine said, "Give me a third one," and the trial court found him in contempt a third time. Id.

Wine continued arguing with the trial court, and the trial court ordered him removed from the courtroom. However, Wine assured the trial court that he could be quiet, and the trial court allowed him to stay in the courtroom. The trial court said, "We're gonna try this one more time. This is the last time. You've already got . . . four contempts." Id. at 25. Wine then said to a spectator in the courtroom, "Is something funny?" and the trial court found him in contempt again. Id. The trial court said it was Wine's fifth contempt.

4

The trial court then entered the following written order regarding the contempt findings:

> [D]uring the questioning of a witness, the Defendant objected. The court again removed the jury and again advised the Defendant he was to speak only through counsel. The Defendant remained combative and disrespectful. He was then informed he was in contempt (Count I). The Defendant then baited the court to make additional findings of direct contempt on at least 3 additional occasions, which the court did (Counts II, III & IV). The Defendant was so informed. At that time, he turned his back to the court and looked at the gallery where various spectators were seated. He then said to someone "what's so funny" or words to that effect. He was then found in contempt, again (Count V).
>
> The conduct of the Defendant, as recited above, is as heinous as the court has ever witnessed of a criminal defendant. His actions were clearly motivated to undermine these proceedings and to attempt to cause a mistrial.

App. pp. 4-5 (footnote omitted). The trial court found Wine in direct criminal contempt for five counts and sentenced him to 180 days of incarceration for each count for a total of 900 days.

On the third day of the trial, Wine was scheduled to take the stand. Wine started arguing with the trial court again about the content of his testimony. The trial court found Wine in contempt two more times during the conversation. During Wine's testimony the trial court found him in contempt another six times. Eventually, Wine was removed from the stand at his attorney's request. The defense rested, and Wine said, "I would like to continue, but they won't let me." Tr. p. 38. The trial court found him in contempt again. When the jury was ready to give its verdict, the trial court found Wine in contempt two more times.

5

The jury found Wine guilty as charged. The trial court issued another written order regarding Wine's numerous contempts. The trial court concluded that "in light of the order entered June 12, 2013, and the jury's verdict of guilty to Dealing in a Schedule I, II, or III Controlled Substance, a Class B Felony, the court elected not to impose any further sanctions, despite the fact that it would have been well within its authority to do so." App. p. 6. Wine now appeals the contempt findings and sentence.

**Analysis**

Contempt proceedings may be generally categorized as civil or criminal, according to the nature and purpose of the sanction imposed. Jones v. State, 847 N.E.2d 190, 199 (Ind. Ct. App. 2006), trans. denied. This action concerns a criminal contempt, which is an act directed against the dignity and authority of the court that obstructs the administration of justice and tends to bring the court into disrepute. Id. "Accordingly, a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party." Id.

Contempt also may be direct or indirect. Id. "Direct contempts, on the one hand, involve actions in the presence of the court, such that the court has personal knowledge of them." Id. "Indirect contempts, on the other hand, undermine the orders or activities of the court but involve actions outside the trial court's personal knowledge." Id. Here, the contempt is direct because Wine's misbehavior took place in the trial court's presence.

*I. Sufficiency of the Evidence*

In general, the determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. Id. We will reverse the trial court's

6

determination only if the court has abused its discretion.  Id.  A court has abused its discretion when its decision is against the logic and effect of the facts and circumstances before the court or is contrary to law.  Id.

First, Wine argues that the evidence is insufficient to sustain five contempt findings.  Wine argues that, on the second day of the trial, the trial court made four contempt findings, not five.  The purpose of a trial court's contempt power is to "enable the court to protect itself against gross violations of decency and decorum."  Warr v. State, 877 N.E.2d 817, 824 (Ind. Ct. App. 2007), trans. denied.  "When reviewing a finding of contempt, we accept as true the statement entered by the trial court and will interfere with the judgment only where it clearly appears the acts do not constitute contemptuous acts."  Id.

The five contempt findings were detailed in the trial court's written order on the second day of the trial.  According to the order, the first contempt occurred when Wine objected during a witness's testimony.  The next three counts occurred when Wine "baited the court to make additional findings of direct contempt on at least 3 additional occasions . . . ."  App. p. 5.  The fifth contempt finding occurred when Wine said, "what's so funny," to a spectator at the trial.  Id.  However, Wine is correct that the record only indicates that the trial court found him in contempt four times during this period of time.

The record indicates that, after Wine objected during a witness's testimony, the trial court found him in contempt for the first time.  Wine continued arguing with the trial court.  The trial court told Wine to stop talking, but Wine continued and said, "Well - -."  Tr. p. 23.  The trial court then found him in contempt for a second time and ordered him

7

to serve another 180 days. Wine said, "Give me a third one," and the trial court found him in contempt a third time. Id. Wine continued arguing with the trial court, and the trial court stated that he already had "four contempts," even though the trial court had only mentioned three prior contempts. Id. at 25. Wine then said to a spectator in the courtroom, "Is something funny?" and the trial court found him in contempt again and said that was Wine's fifth contempt. Id.

The record only indicates that the trial court found Wine in contempt on four occasions during the second day of the trial. The State concedes that the trial court did not explicitly note the fourth contempt, but the State argues that "[i]t cannot be seriously disputed that Defendant was not considered in contempt during this exchange particularly when the court took the action of starting to remove Defendant." Appellee's Br. p. 14.

Indiana Code Section 34-47-2-4, which governs contempt procedures, provides: "The court shall distinctly state the act, words, signs, gestures, or other conduct of the defendant that is alleged to constitute the contempt." Even though Wine did argue with the trial court between the third and fifth contempt findings, we cannot say the evidence is sufficient to sustain the fourth contempt where the trial court's order did not specify exactly what Wine did and the trial court did not explicitly find Wine in contempt on the record. The trial court here did not distinctly state Wine's conduct that was alleged to constitute the fourth contempt finding. Under these circumstances, we must reverse the fourth contempt finding.

Wine also argues that evidence is insufficient to sustain the second and fifth contempt findings. The second contempt occurred when the trial court instructed Wine to

8

stop talking, and he said, "Well - -." Tr. p. 23. According to Wine, "Nothing in the administration of justice was impeded by the comment . . . ." Appellant's Br. p. 17. As for the fifth contempt, it resulted from Wine's comments to a spectator after he had repeatedly been told to stop talking by the trial court. Wine contends that this comment also did not impede the administration of justice. We disagree. The trial court repeatedly told Wine to stop talking, and Wine simply would not comply. His conduct clearly obstructed the administration of justice in this case, and the evidence is sufficient to sustain the remaining contempt findings.

## II. Procedures for Finding Contempt

Next, Wine argues that the trial court failed to follow the proper procedures in making the contempt findings. First, according to Wine, the trial court failed to allow him to explain or purge the contempt. In support of these arguments, Wine cites Indiana Code Section 34-47-2-4, which provides, in part:

> (b)      The court shall distinctly state the act, words, signs, gestures, or other conduct of the defendant that is alleged to constitute the contempt. The statement shall be reduced to writing either by:
>
> (1) the judge making the statement; or
>
> (2) by a reporter authorized by the judge to take down the statement when the statement is made.
>
> (c)      A statement described in subsection (b), shall be substantially set forth in the order of the court on the contempt, together with any statement made in explanation, extenuation, or denial of the contempt, which the defendant may make in response to the judge's statement.

9

The statute does not oblige the trial court to permit or require the defendant to explain or deny the contempt. See, e.g., McWhirt v. Fearnow, 158 Ind. App. 68, 71, 301 N.E.2d 810, 813 (1973) ("On the record before us we are unable to say that McWhirt made any statement of any kind when the court charged him with contempt, much less that he made a statement in explanation, extenuation, or denial. Consequently we are unable to say that the trial court failed to include such a statement in the order."), cert. denied.

Wine's contention that he should have been allowed opportunities to "purge" the contempts is also misplaced. We have noted that "a jail sentence for civil contempt must be coercive or remedial rather than punitive in nature." In re Paternity of C.N.S., 901 N.E.2d 1102, 1106 (Ind. Ct. App. 2009). "To avoid being purely punitive, a [civil] contempt order must offer an opportunity for the recalcitrant party to purge himself or herself of the contempt." Id. On the other hand, "a criminal contempt sanction is punitive in nature because its purpose is to vindicate the authority of the court, and it benefits the State rather than the aggrieved party." In re Paternity of M.P.M.W., 908 N.E.2d 1205, 1210 n.2 (Ind. Ct. App. 2009). This case involves criminal contempt, and the sanctions are punitive. Consequently, an opportunity to purge himself was not required.

Wine next argues that the trial court's statement regarding the contempt findings was insufficient. Wine contends that the trial court did not state specifically what conduct led to each contempt. Wine wants us to review each contempt finding in a vacuum, which we decline. A review of the record reveals that Wine's disruptive behavior persisted throughout his three-day trial. He continually interrupted the

10

proceedings and argued with the trial court. Despite being given many opportunities to conform his behavior, Wine refused. The trial court was justified in finding Wine in contempt for each of the remaining four contempts, and the trial court's order adequately explains the behavior that led to the contempt findings.[1]

### III. Sentencing

Finally, Wine claims that his sentence was excessive. Although the trial court imposed a 900-day sentence (180 days for each of five contempt findings), we have reversed one of the contempt findings. This leaves a sentence of 720 days (180 days for each of four remaining contempt findings).

Wine notes that the standard of review of contempt sentences is unclear at this time. Our supreme court has previously utilized the "manifestly unreasonable" standard of review in such cases. See Hopping v. State, 637 N.E.2d 1294, 1297-98 (Ind. 1994), cert. denied. However, the "manifestly unreasonable" standard of Indiana Appellate Rule 7(B) was revised effective January 1, 2003. Indiana Appellate Rule 7(B) now provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender."

We discussed this issue in Jones, where we noted:

---

[1] Wine also argues that the trial court did not establish that "immediate action was necessary either to maintain order in the court or to maintain respect for the dignity of the court." Appellant's Br. p. 15 (citing Brennan v. State, 242 Ind. 79, 173 N.E.2d 312 (1961)). Given Wine's repeated interruptions of the trial, improper statements in front of the jury, argumentative attitude with the trial court, and failure to follow the trial court's repeated directions to stop talking, we conclude that the trial court acted properly to maintain order in the court and to maintain a respect for the court's authority.

11

[B]efore its repeal in 1987, Indiana Code Section 34-4-7-6 limited punishment for contempt to a fine of $500.00 and/or imprisonment of no more than three months. See Downs v. State, 827 N.E.2d 646, 652 (Ind. Ct. App. 2005) (citing Contempt of Steelman, 648 N.E.2d 366, 369 (Ind. Ct. App. 1995)), trans. denied. We have recognized, "in the absence of the statute, the power to punish contempt is limited by reasonableness." In re Gardner, 713 N.E.2d 346, 347 (Ind. Ct. App. 1999) (citing Hopping v. State, 637 N.E.2d 1294, 1297 (Ind. 1994), cert. denied, 513 U.S. 1017, 115 S. Ct. 578, 130 L.Ed.2d 493 (1994)). In Hopping, our Supreme Court noted that punishment for contempt is "generally a matter left to the sound discretion of the trial court" and then applied the "manifestly unreasonable" standard. 637 N.E.2d at 1297-98. Under the manifestly unreasonable standard, a reviewing court did not revise a sentence "authorized by statute" unless it determined that "no reasonable person could find the sentence appropriate given the particular offense and character of the offender." See id.; see also Ind. Appellate Rule 7(B) (2002) (repealed effective Jan. 1, 2001; formerly Ind. Appellate Rule 17). Now, however, we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Ind. Appellate Rule 7(B) (2005). However, both the old and the new standards for revising sentences apply to sentences "authorized by statute." Because there is no longer a statute setting out the punishment for contempt, it is unclear whether Appellate Rule 7(B) should apply in reviewing contempt sentences.

Jones, 847 N.E.2d at 201-02.

In Jones, we did not decide which standard to apply because, "under an inappropriateness, manifestly unreasonable, or simple reasonableness test," we concluded that the contempt sentence at issue passed "muster." Id. at 202. Similarly, here, regardless of which standard of review that we apply, the sentence imposed by the trial court passes muster. The trial court stated that Wine's behavior was "as heinous as the

12

court has ever witnessed of a criminal defendant." App. p. 5. Wine repeatedly disrupted the jury trial proceedings despite the trial court's warnings. Wine was warned that he would be sentenced to 180 days for each contempt, but he continued with his disorderly behavior. Ultimately, the trial court found him in contempt at least fifteen times and removed him from the courtroom several times. Under these circumstances, the trial court's sentence of 180 days for each of four contempts for a total of 720 days was not inappropriate, manifestly unreasonable, or unreasonable.

## Conclusion

The evidence is sufficient to sustain four of the five contempt findings; however, we reverse the fourth contempt finding. The trial court followed the appropriate procedure in entering the contempt findings, and the sentence imposed by the trial court is proper. We affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

ROBB, J., and BROWN, J., concur.