## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 05 2017, 8:52 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Anthony C. Lawrence
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Larry D. Allen
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Paris LaPriest Powell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

April 5, 2017

Court of Appeals Case No.
48A04-1603-CR-691

Appeal from the
Madison Circuit Court

The Honorable
Thomas L. Clem, Judge

Trial Court Cause No.
48C05-1503-CM-336

**Kirsch, Judge.**

Paris LaPriest Powell ("Powell") was convicted after a jury trial of battery[1] as a Class A misdemeanor and conversion[2] as a Class A misdemeanor, and the trial court imposed a total sentence of one year with six months suspended and the balance to be served on work release. He appeals raising several issues, which we restate as:

> I. Whether the trial court abused its discretion in instructing the jury;
>
> II. Whether the State improperly withheld certain exculpatory evidence from Powell in violation of *Brady v. Maryland*;[3]
>
> III. Whether the trial court erred because it did not allow Powell to present witnesses and evidence on his behalf at his sentencing hearing; and
>
> IV. Whether Powell's sentence is inappropriate in light of the nature of the offense and character of the offender.

We affirm.

---

[1] *See* Ind. Code § 35-42-2-1(b)(1), (c).

[2] *See* Ind. Code § 35-43-4-3(a).

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

# Facts and Procedural History

[3] In September 2014, Powell was living together with Jennifer Clary ("Clary") in a home located in Anderson, Indiana. On September 29, 2014, Clary had a friend, Leah Vaughn ("Vaughn"), staying at the house; Vaughn had stayed overnight the night before, and Clary and Vaughn spent the day together on September 29 driving around town and visiting Vaughn's mother. Clary and Vaughn returned to the house late in the evening.

[4] When the women arrived at the house, Powell was waiting for them in the living room. As soon as Clary and Vaughn came into the house, Powell became angry because Clary had not returned his phone calls to her while she was out with Vaughn. Powell then ordered Vaughn to leave the house immediately. Vaughn stated that she wanted to retrieve her belongings, which were located upstairs, before leaving. After Vaughn and Powell argued about retrieving Vaughn's overnight bag, Powell agreed to allow Vaughn to get her bag. He then grabbed Vaughn by the arm and dragged her up the stairs. Powell was physically larger than Vaughn, and as he quickly went up the stairs, dragging Vaughn, he caused her to trip on the steps. They entered the bedroom where Vaughn's belongings were located, and Powell commanded Vaughn to sit on the bed. Vaughn replied that she was leaving since she had retrieved her overnight bag. Powell then snatched the bag out of Vaughn's hands, and with his other hand, he grabbed Vaughn by her hair and dragged her back down the stairs. Powell's actions of grabbing Vaughn by the arm and hair and dragging

her through the house caused her pain and resulted in some of her hair falling out.

[5] When Powell and Vaughn reached the living room, Powell demanded that Vaughn give him her cell phone and snatched the phone out of her hand. Powell, still grabbing Vaughn by the hair, then shoved her out the front door. He threw her bag and belongings out the door too, and the contents were strewn all over the front yard. Powell kept Vaughn's cell phone.

[6] After Vaughn attempted to gather up all of her things, she began walking down the street toward another friend's house. Vaughn was very upset and crying. As she walked down the street, Vaughn spotted a passing patrol car and waved at the officer to get him to pull over. At that time, it was about 2:00 a.m. on September 30, 2014. Anderson Police Department Officer David Reed ("Officer Reed") observed Vaughn and stopped to assist her. Vaughn recounted to Officer Reed what had transpired and what Powell had done. Officer Reed reported what had occurred on his police radio, and shortly thereafter, Anderson Police Department Officers Michael Lee and Chaz Willis, who were riding together in a separate patrol car, arrived at Officer Reed's location as backup. Vaugh told the officers that she wanted to get her cell phone back from Powell and that she was afraid of him.

[7] The officers accompanied Vaughn back to the house and knocked on the front door. Powell answered the door and denied that anything had happened and stated that he did not have Vaughn's cell phone. At that time, Officer Reed

dialed Vaughn's cell phone number, and the officers could hear the phone ringing from the sofa, where Powell had been sitting before answering the door. Although Powell claimed he was not aware of the phone's location, he went directly to the sofa to retrieve the phone and handed it to the officers. During this time, Vaughn retrieved more of her belongings that were scattered in the front yard. The officers drove Vaughn to a motel so she had a place to stay for the night. While Vaughn had been reluctant to pursue criminal charges against Powell when she first encountered the police, she changed her mind on the way to the motel. The officers recorded a video statement from her.

[8] The State charged Powell with Class A misdemeanor battery and Class A misdemeanor conversion. A jury trial was held, at which Powell represented himself with standby counsel assisting. Prior to trial, Powell filed a notice that he intended to present a defense of justifiable reasonable force, and he also requested a preliminary instruction on the use of reasonable force as a defense. *Tr.* at 93, 167. The trial court informed Powell that "if that becomes an issue, I'm going to let ya give [the instruction]," but warned that "it has to become an issue in the case, before it's given." *Id.* at 168. After the parties concluded their presentation of evidence at trial, Powell asked the trial court to give a final instruction on the use of reasonable force in defense of property. *Id.* at 356. The trial court requested to see Powell's proposed instruction, but Powell did not have a prepared instruction. Powell's standby counsel asked the trial court to give the pattern jury instruction, but ultimately, the trial court refused to give the instruction on the basis that it was not supported by the evidence presented

at trial and because the pattern jury instruction mentioned the use of deadly force. *Id.* at 358-60.

[9] Powell then stated that he was ready to make his closing argument and agreed that the trial court's instructions were satisfactory. *Id.* at 360-61. Powell's standby counsel objected on his behalf as to the trial court's refusal to give a defense of property instruction, which the trial court overruled. *Id.* at 367-68. When Powell made his closing argument, he did not argue that he acted in defense of his property; instead, he argued that he never grabbed Vaughn's hair or took her cell phone and only escorted her out of the house. *Id.* at 374-92. At the conclusion of the trial, the jury found Powell guilty as charged.

[10] During the sentencing hearing on December 22, 2015, Powell argued that there were no injuries to Vaughn. The State responded, "as far as there not being evidence of bruising[,] I saw the pictures Your Honor, there was a lot of bruising on that young lady." *Id.* at 440. Powell inquired as to why such pictures were not offered, and the State responded, "Because I knew what you were going to say if she got on the witness stand and said that." *Id.* at 441. Powell did not raise any objection to these statements by the State or request to review the pictures mentioned by the State.

[11] In his argument to the trial court at sentencing, Powell stated that he had witnesses available to testify if necessary. After Powell made his argument at sentencing, the trial court inquired as to whether Powell had anything else to present, and Powell responded that he did not. *Id.* at 440, 448. Powell did not

attempt to present any witnesses during the sentencing hearing, and no objections were raised in reference to his witnesses. After hearing the argument of the parties, the trial court sentenced Powell to a one-year sentence for each of his Class A misdemeanor convictions, with the sentences to run concurrently. Of his aggregate one-year sentence, six months were to be served on work release and six months on probation. Powell now appeals.

## Discussion and Decision

### I. Jury Instruction

[12] Powell argues that the trial court abused its discretion when it refused to give his proposed jury instruction on the use of force to protect person or property defense. However, Powell has waived this claim because he failed to tender a proposed jury instruction in writing. An oral request for a jury instruction is not enough and failure to tender the jury instruction in writing waives the claim on appeal. *Ketcham v. State*, 780 N.E.2d 1171, 1177 (Ind. Ct. App. 2003), *trans. denied*.

[13] Waiver notwithstanding, Powell's claim fails on the merits. The manner of instructing a jury is left to the sound discretion of the trial court. *Albores v. State*, 987 N.E.2d 98, 99 (Ind. Ct. App. 2013), *trans. denied*. On appeal, we review the trial court's decision only for an abuse of that discretion. *Id.* In reviewing a trial court's decision to refuse a proposed jury instruction, we consider whether the instruction (1) correctly stated the law, (2) was supported by the evidence, and (3) was covered in substance by other instructions that are given. *Id.*

[14] Here, although Powell did not tender a proposed instruction in writing, his standby counsel orally requested that the trial court give the pattern jury instruction. Indiana Pattern Criminal Jury Instruction 10.04, which was the pattern jury instruction orally proposed by standby counsel and reviewed by the trial court, states in pertinent part:

> A person may use reasonable force, including deadly force, against another person, and does not have a duty to retreat, if he/she reasonably believes that the force is necessary to prevent or terminate the other person's unlawful entry of or attack on his/her dwelling.

[15] In the present case, the evidence did not support giving this instruction as to use of force to protect person or property defense. The evidence presented showed that Vaughn was an invited guest of Clary when she entered the house. Vaughn had stayed overnight at the house the night before, and her belongings were still inside of the house. Shortly after Vaughn arrived at the house, Powell demanded that she leave, and Vaughn responded that she wanted to get her belongings first. *Tr*. at 195-96. Powell then grabbed her by the arm and dragged her up the stairs to get her bag. After obtaining her bag, Vaughn told Powell, "I'm leaving," but he snatched the bag from her and grabbed her by the hair and pulled her down the stairs and out the front door. *Id*. at 199-200. This evidence did not support that an unlawful entry by Vaughn or an attack on Powell's dwelling occurred, which must be present to trigger the defense of reasonable force. We conclude that the evidence presented at trial did not support giving the pattern jury instruction on the use of force to protect a

person's dwelling.  The trial court did not abuse its discretion in refusing to give the jury instruction.

## II. *Brady* Violation

Powell argues that the State committed a violation of *Brady v. Maryland* because it failed to disclose photographs of Vaughn that he claims were exculpatory. Initially, the State contends that Powell has waived his *Brady* claim for failing to follow the proper procedural steps.  We agree.  The procedural steps for raising a *Brady* issue are controlled by Criminal Rule 16 and Trial Rules 59 and 61. *Prewitt v. State*, 819 N.E.2d 393, 400 (Ind. Ct. App. 2004), *trans. denied*.  A *Brady* violation is almost always based on evidence that comes to light after trial, and if so, it is raised by a motion for a new trial based on newly discovered evidence, or a motion to correct error.  *Id*.  Pursuant to Indiana Criminal Rule 16(A), the defendant must file a motion to correct error in order to address "newly discovered material evidence, including alleged jury misconduct, capable of production within thirty (30) days of sentencing which, with reasonable diligence, could not have been discovered and produced at trial." *See also* Ind. Trial Rule 59(A).  "A motion to correct error addressing newly discovered evidence is a mandatory prerequisite for an appeal, and a failure to file such a motion will result in a waiver of the issue unless the provisions of Trial Rule 60(B)(2) for late discovered evidence apply."  *Prewitt*, 819 N.E.2d at 400 (internal quotations omitted).

[17] Here, Powell learned of the photographs that he alleges were exculpatory during sentencing. In order to allow the trial court an opportunity to rule on his allegations of a *Brady* violation, Powell was required to raise the issue in a motion for a new trial based on newly discovered evidence or in a motion to correct error. *Prewitt*, 819 N.E.2d at 400. Because he did not do so, Powell has waived his claim on appeal. Therefore, he must raise his issue as fundamental error. *See Hoglund v. State*, 962 N.E.2d 1230, 1239 (Ind. 2012) ("The fundamental error doctrine provides a vehicle for the review of error not properly preserved for appeal."). However, Powell does not allege fundamental error in his brief. He has, thus, waived his argument for failure to make a cogent argument. *See Absher v. State*, 866 N.E.2d 350, 355 (Ind. Ct. App. 2007) (holding that appellant failed to successfully invoke doctrine of fundamental error when he failed to provide cogent argument).

[18] Waiver notwithstanding, Powell's *Brady* argument fails on the merits. In *Brady v. Maryland,* the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "'To prevail on a *Brady* claim, a defendant must establish: (1) that the prosecution suppressed evidence; (2) that the evidence was favorable to the defense; and (3) that the evidence was material to an issue at trial.'" *Bunch v. State*, 964 N.E.2d 274, 298 (Ind. Ct. App. 2012) (quoting *Minnick v. State,* 698 N.E.2d 745, 755 (Ind. 1998), *cert. denied,* 528 U.S. 1006 (1999)), *trans. denied*.

Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id*. (citing *United States v. Bagley,* 473 U.S. 667, 682 (1985)). The State will not be found to have suppressed material evidence if it was available to a defendant through the exercise of reasonable diligence. *Id*. (citing *Conner v. State,* 711 N.E.2d 1238, 1246 (Ind. 1999), *cert. denied,* 531 U.S. 829 (2000)). Favorable evidence includes both exculpatory evidence and impeachment evidence. *Id*. at 297-98.

[19]  Powell argues that the photographs of Vaughn could have been exculpatory because they demonstrated that someone else had inflicted injury to Vaughn or they could have impeached Vaughn's credibility and other witnesses who had stated an absence of injury. Powell has not shown how photographs depicting "a lot of bruising" to Vaughn would have been favorable to his defense or material to an issue at trial. *Tr*. at 440. The only information that is known about the photographs is that they depicted Vaughn after the battery, and they showed "a lot of bruising." *Id*. There is no evidence that these photographs would have been helpful to Powell's defense. Powell has failed to indicate that there is a reasonable probability that, had these photographs of Vaughn been disclosed to the defense, the result of the proceeding would have been different. *Bunch*, 964 N.E.2d at 298. We, therefore, conclude that Powell has not shown that a *Brady* violation occurred.

# III.  Evidence at Sentencing

[20]  Powell claims that the trial court erred because it failed to allow him to present evidence and witnesses on his behalf at sentencing.  Powell specifically asserts that the trial court violated his due process rights when it denied him an opportunity to introduce evidence and have witnesses testify at his sentencing hearing.  He alleges that he had several witnesses available at his sentencing hearing who would have testified to his positive contributions to the community and supported his request for a lenient sentence.

[21]  The Fifth Amendment to the United States Constitution provides in relevant part that no person shall be "deprived of life, liberty, or property, without due process of law."  "[T]he purpose of the sentencing hearing is to give the trial court the opportunity to consider the facts and circumstances relevant to the sentencing of the individual defendant before it."  *Page v. State*, 424 N.E.2d 1021, 1022 (Ind. 1981).

[22]  Here, the record does not reflect that Powell was prevented from calling any witnesses to testify on his behalf.  The record simply shows that Powell informed the trial court that he had witnesses that were potentially available to speak on his behalf if they were needed.  *Tr.* at 435-37.  When the trial court asked Powell after his allocution if he had anything else to present, Powell just offered more argument and did not attempt to actually call any witnesses.  *Id*. at 440, 448.  We conclude that the trial court did not violate Powell's due process rights because nowhere in the record did it exclude any of Powell's witnesses or prevent him from presenting witnesses to testify on his behalf.  Powell has failed

to show error because he did not attempt to call any witnesses and was, therefore, not prevented from presenting evidence on his behalf at sentencing.

## IV.  Inappropriate Sentence

[23]  Powell contends that his sentence is inappropriate under Indiana Appellate Rule 7(B).  He claims that, based on the nature of the offense and the character of the offender, his sentence of six months executed on work release followed by six months on probation is inappropriate.  The State counters that Powell's argument is moot because he has already served his sentence.  We agree.

[24]  "An issue is deemed moot when it is no longer 'live' or when the parties lack a legally cognizable interest in the outcome of its resolution."  *Larkin v. State*, 43 N.E.3d 1281, 1286 (Ind. Ct. App. 2015) (citing *Jones v. State,* 847 N.E.2d 190, 200 (Ind. Ct. App. 2006), *trans. denied*).  When a defendant has already served his sentence, "the issue of the validity of the sentence is rendered moot."  *Irwin v. State,* 744 N.E.2d 565, 568 (Ind. Ct. App. 2001).  "[W]hen we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination 'where absolutely no change in the status quo will result.'"  *Jones*, 847 N.E.2d at 200 (quoting *In re Utley*, 565 N.E.2d 1152, 1154 (Ind. Ct. App. 1991)).  However, we note that although moot cases are usually dismissed, "Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of 'great public interest.'"  *Moore v. State*, 30 N.E.3d 1241, 1245 (Ind. Ct. App. 2015) (quoting  *In re Lawrance,* 579 N.E.2d 32, 37 (Ind.

1991)). Cases involving questions of great public interest typically raise important policy concerns and present issues that are likely to recur. *Mosley v. State,* 908 N.E.2d 599, 603 (Ind. 2009).

Here, Powell was sentenced on December 22, 2015 to six months executed on work release followed by six months on probation. *Appellant's App*. at 58. He was given credit of twenty-nine days for time served prior to trial plus twenty-nine days of credit time for a total of fifty-eight days of credit toward his executed sentence. *Id*. Therefore, the latest date that Powell would have completed his sentence was December 22, 2016. Accordingly, Powell's sentencing argument is moot. Further, the present case does not present an important policy question. Instead, Powell's contention is merely review of alleged error. We, thus, conclude that Powell's claim that his sentence is inappropriate is moot, and we decline to review his claim of error.

Affirmed.

Robb, J., and Barnes, J., concur.