# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**YVETTE M. LAPLANTE**
Keating & LaPlante, LLP
Evansville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JOSEPH Y. HO**
Deputy Attorney General
Indianapolis, Indiana

FILED

Dec 31 2013, 9:12 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAYRON BELL, | ) | |
| | ) | |
| Appellant-Contemnor, | ) | |
| | ) | |
| vs. | ) | No. 82A01-1306-CR-271 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE VANDERBURGH SUPERIOR COURT
The Honorable Robert J. Pigman, Judge
Cause No. 82D02-1209-MR-1149

**December 31, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Dayron Bell appeals the trial court's order finding him in contempt. Bell raises four issues for our review, but we consider only the following dispositive issue: whether this appeal is moot because Bell has served his sentence and none of Bell's issues on appeal justify our review under the public interest exception. We dismiss.

**FACTS AND PROCEDURAL HISTORY**

On May 28, 2013, Bell attended the murder trial of his brother, Christopher. During the trial, Bell threatened at least one of the witnesses. The trial court promptly brought the trial to a halt and instructed the State to call "whoever heard the statements" to the witness stand. Transcript at 4.

The State first called Ricky Hill. Hill testified as follows:

Q      [D]id you hear certain threats made by a person who[ is] in the courtroom now?

A      Yes I did.

Q      What were the substance of those threats?

A      . . . a young man out there in the audience . . . turned to look [at the witnesses in the hallway] and told them "I'm ten (10) times worse than my brother."

Q      Okay. Did he make any mention about their testimony?

A      He had said something before that and I didn't hear that.

Id. at 5-6. Hill then identified Bell as the person who had made that statement.

2

The State then called Darryl Meriweather.[1]  According to Meriweather:

Q       Were you out in the hallway about ten (10) minutes ago?

A       Yes.

Q       And did you have an opportunity to . . . hear what Mr. Bell said out there?

A       Yes.

Q       And what did he say?

A       He said, "Better not nobody testify against his brother or it will be three (3) times worse."

Q       Who did he say that to?

\* \* \*

A       Well I think he was directing it towards [an eyewitness's mother].

Q       Okay, okay.  There's several people standing out there is that right.

A       Yeah, because we were all standing there together, so it could had been all of us.  But, it looked more like to me it was her.

Id. at 11.

The court then ordered Bell to the witness stand.  Bell denied that he had threatened any of the witnesses.  The court then found as follows:

[H]ere's the problem I got.  We got a witness called by the State, an eyewitness to a murder, whose home was broken into last night, and was beaten, and obviously someone is trying to intimidate her.  And I hear you're out there shooting your mouth off which is a polite way of putting it.  [T]his is a Court of Law, Mr. Bell, we decide things not the way we do in the street or in the alley.  We don't bully people, we don't try to get over on

---

[1]  The exact spelling of Meriweather's name is not clear based on the record on appeal.  We follow the spelling used by the State in its brief, which the State represents is based on the spelling Meriweather gave during a deposition.

3

people, we don't intimidate people. This is contempt of court and I'm finding you in Contempt of Court. . . . I believe these folks are telling me the truth and say what you said.

Id. at 17-18. The court ordered Bell to jail for the remainder of the trial.

Following the trial, on June 3 the court appointed a public defender for Bell, and on June 7 the court held a sentencing hearing. At that hearing, the court rejected Bell's argument that the contempt order was for indirect contempt and instead found that the order was for direct contempt, stating that "it occurred in or very near the actual trial itself, it directly impacted the trial at the time the trial was . . . in . . . progress. It happened literally right outside the door of the courtroom." Id. at 27. The court then restated its rationale for finding Bell in contempt and ordered him to serve ninety days in the Vanderburgh County Jail with no good time credit. This appeal ensued. Bell was released from his sentence on August 25.

## DISCUSSION AND DECISION

On appeal, Bell asserts that the trial court erroneously determined him to be in direct contempt, rather than indirect contempt, and that, because of this mistake, the trial court denied him certain due process protections normally available for indirect contempt proceedings. See Ind. Code § 34-47-3-5. Bell alternatively asserts that, even if the trial court's determination that he was in direct contempt was correct, the court still denied him certain statutory safeguards. See I.C. § 34-47-2-4.

But the parties agree that this appeal is moot because Bell has served his contempt sentence and has been released. As we have explained:

4

where the principal questions at issue cease to be of real controversy between the parties, the errors assigned become moot questions and this court will not retain jurisdiction to decide them. Stated differently, when we are unable to provide effective relief upon an issue, the issue is deemed moot, and we will not reverse the trial court's determination where absolutely no change in the status quo will result.

Jones v. State, 847 N.E.2d 190, 200 (Ind. Ct. App. 2006) (citations and quotations omitted), trans. denied. There is no question that any decision we were to render on Bell's claims would result in "no change in the status quo." Id. As such, Bell's appeal is moot.

> "Although moot cases are usually dismissed, Indiana courts have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of 'great public interest.'" [In re Lawrance, 579 N.E.2d 32, 37 (Ind. 1991)]. Typically, cases falling in the "great public interest" exception contain issues likely to recur. Id.

In re Commitment of J.B., 766 N.E.2d 795, 798 (Ind. Ct. App. 2002).[2] Here, Bell asserts that the "public interest exception" applies to his case for the following four reasons:

> [First, t]his court has previously held that "the question of whether good-time credit applies to a sentence for criminal contempt, and further, whether a contemnor's sentence is reasonable are ones of significant import which may continue to evade review." [Jones, 847 N.E.2d at 200-01]. [Second, and s]imilarly, the question of whether or not the perceived intimidation of a witness outside the presence of a judge, but inside the courthouse, during a murder trial is direct or indirect contempt[] may continue to evade review due to the short nature of contempt sentences. [Third], due process rights and the violation thereof are matters of great public importance. [Fourth], for as long as there are trials and witnesses, these types of situations are likely to occur.

---

[2] Both parties cite Jones for the definition of the public interest exception, but in Jones this court stated that the public interest exception applies when "the issue arises in a context which will continue to evade review." Jones, 847 N.E.2d at 200. Our Supreme Court has rejected the "additional element . . . that the case must be likely to evade review." In re Lawrance, 579 N.E.2d at 37 n.2.

Appellant's Br. at 6.

The only one of Bell's four rationales that might merit invoking the public interest exception is his concern that the trial court here improperly held him in direct contempt rather than indirect contempt. But there is an established body of law on the differences between these two types of contempt. See, e.g., In re Nasser, 644 N.E.2d 93, 95-96 (Ind. 1994) (clarifying the distinction between direct and indirect attempt and discussing numerous authorities). Any review we gave to this issue here would not add to this body of law, but would merely apply existing law.

We also reject the other grounds alleged by Bell for why we should not dismiss his appeal. Since the end of 2011, this court has applied the public interest exception to consider only the following issues: "the proof necessary for [an] involuntary commitment," In re Commitment of T.K., 993 N.E.2d 245, 248 (Ind. Ct. App. 2013), trans. decision pending; "what suffices as 'reasonably particular' in a request for public records submitted under the Access to Public Records Act," Anderson v. Huntington Cnty. Bd. of Comm'rs, 983 N.E.2d 613, 614 (Ind. Ct. App. 2013), trans. denied; and "whether a residency restriction can be a condition of a convicted child molester's parole[] when the statute authorizing the imposition of that condition was not in effect at the time he committed the offense," Gaither v. Ind. Dep't of Correction, 971 N.E.2d 690, 694 (Ind. Ct. App. 2012).[3] Nothing in the facts of Bell's case persuades this court that the

---

[3] In a fourth opinion, a divided panel of this court considered an appeal involving "issues of competitive bidding and the expenditure of taxpayer money." Alva Elec., Inc. v. Evansville Vanderburgh Sch. Corp., 984 N.E.2d 668, 676-77 (Ind. Ct. App. 2013), trans. granted. However, our Supreme Court has granted transfer in that opinion, thereby vacating it. Ind. Appellate Rule 58(A).

6

issues raised by Bell are of "great public importance." See In re Commitment of J.B., 766 N.E.2d at 798.

In essence, Bell's argument for applying the public interest exception conflates an exception reserved for "questions of great public importance" with mere error review. See id. That is not the purpose of this limited exception, and we will not deviate from our general rule of not deciding moot cases based on these facts. Accordingly, we decline Bell's invitation to apply the public interest exception to this appeal, and we dismiss Bell's appeal as moot.

Dismissed.

BAKER, J., and CRONE, J., concur.