## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2016, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deborah Markisohn
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Timothy Hooker,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 20, 2016

Court of Appeals Case No.
49A02-1602-CR-384

Appeal from the Marion Superior Court

The Honorable Amy Jones, Judge

Trial Court Cause No.
49G08-1508-CM-27723

**Robb, Judge.**

# Case Summary and Issues

[1] Following a bench trial, Timothy Hooker was convicted of conversion as a Class A misdemeanor. The trial court sentenced Hooker to one year in the Marion County Jail with two days credit and 363 days suspended to probation. Hooker now appeals his conviction and sentence, raising three issues for our review, which we consolidate and restate as: (1) whether the State presented sufficient evidence to rebut his mistake of fact defense, and (2) whether the trial court abused its discretion in sentencing Hooker. Concluding the State presented sufficient evidence to rebut Hooker's mistake of fact defense but the trial court abused its discretion in sentencing Hooker, we affirm his conviction and remand with instructions.

# Facts and Procedural History

[2] For over thirty years, Hooker and Donald Vick were close friends. In 2015, Hooker worked for Vick, who was a painting contractor, and also lived with Vick in Vick's home. Vick owned a vehicle he used every day to get to and from work. On the morning of Sunday, August 2, 2015, Hooker asked to borrow the vehicle so he could go to his mother's house. Vick obliged, stating, "[Y]ou can run to your mother's. . . . [S]ee ya in a little bit, be safe." Transcript at 7. Vick needed the vehicle for work the next day and expected Hooker to return the vehicle later that day. Hooker did not return the vehicle and Vick reported it stolen the following day.

[3]     Over the next couple of days, Vick called Hooker numerous times and left voicemails, none of which Hooker returned.  On August 5, 2015, Vick observed his vehicle near a local gas station.  He immediately called 911 and law enforcement stopped the vehicle.  Hooker, who was driving the vehicle, was arrested.

[4]     On August 6, 2015, the State charged Hooker with conversion as a Class A misdemeanor.  At a bench trial held on January 27, 2016, Hooker asserted a mistake of fact defense and testified his extended possession of the car was reasonable because he did not believe Vick needed to use the car.  The trial court found Hooker guilty as charged and sentenced him to one year in jail with 363 days suspended to probation, which would be discharged upon successful completion of a substance abuse evaluation.  The trial court then stated,

> Undergo a substance abuse evaluation and treatment.  If there is anything [to the evaluation] you do [treatment], if there's not then I'll show your probation—it can terminate as soon as you go through [the evaluation]. . . .  I'll show that your probation fees will be on a sliding fee scale.  So work with probation, tell them about you know, your lack—I understand, you're in construction and it's a slow time.  You don't have any income right now, they're going to be able to adjust your fees accordingly.  You're going to be on random drugs screens as a standard condition of probation so I'll put you in a three dollar slot for that, so it's not going to cost you thirteen bucks a pop for that. . . .  I'll find you indigent to court costs and I'm not going to access [sic] a fine.

*Id*. at 29-30.  Hooker completed a substance abuse evaluation and he was not referred to treatment.  On April 5, 2016, the trial court granted the probation

department's request to discharge Hooker from probation. The probation department assessed $640 in fees, which Hooker had not yet paid. The trial court ordered those fees be sent to collections. This appeal ensued.

# Discussion and Decision

## I. Mistake of Fact

[5] "A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a Class A misdemeanor." Ind. Code § 35-43-4-3(a). The State alleged Hooker knowingly or intentionally exerted unauthorized control over Vick's vehicle. "A person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." Ind. Code § 35-41-2-2(a). "A person engages in conduct 'knowingly' if, when he engages in the conduct, he is aware of a high probability that he is doing so." Ind. Code § 35-41-2-2(b).

[6] Hooker contends the evidence is insufficient to support his conviction, arguing the State failed to meet its burden of disproving his mistake of fact defense beyond a reasonable doubt. Pursuant to Indiana Code section 35-41-3-7, a mistake of fact defense "is a defense that the person who engaged in the prohibited conduct was reasonably mistaken about a matter of fact, if the mistake negates the culpability required for commission of the offense."

> When the State has made a prima facie case of guilt, the burden is on the defendant to establish an evidentiary predicate of his mistaken belief of fact, which is such that it could create a

reasonable doubt in the fact-finder's mind that the defendant had acted with the requisite mental state. The State retains the ultimate burden of proving beyond a reasonable doubt every element of the charged crime, including culpability or intent, which would in turn entail proof that there was no reasonably held mistaken belief of fact. In other words, the State retains the ultimate burden of disproving the defense beyond a reasonable doubt. The State may meet its burden by directly rebutting evidence, by affirmatively showing that the defendant made no such mistake, or by simply relying upon evidence from its case-in-chief.

*Saunders v. State*, 848 N.E.2d 1117, 1121 (Ind. Ct. App. 2006) (citations omitted), *trans. denied*.

[7] Whether a defendant made a mistake of fact is a question for the finder of fact. *Id*. On appeal, we review the issue under the same standard we generally review a challenge to the sufficiency of the evidence. *Id.* We neither reweigh the evidence nor assess witness credibility. *Id*. We look only to the probative evidence supporting the judgment and the reasonable inferences from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. *Id*. We will uphold a conviction if there is substantial evidence of probative value to support it. *Id*.

[8] At trial, Vick testified he used the vehicle daily to get to and from work. Hooker requested to borrow the vehicle to run to his mother's house and Vick permitted him to use the vehicle for that purpose. In addition, Vick needed the vehicle for work the next day, and expecting Hooker to return with the vehicle later that day, Vick told Hooker he would see him "in a little bit." Tr. at 7.

When Hooker did not return, Vick made several attempts to contact him, but Hooker did not return Vick's calls. Vick only heard from Hooker and received his vehicle after the vehicle was reported as stolen, Vick discovered the vehicle's whereabouts, law enforcement stopped the vehicle, and Hooker was arrested. Hooker testified he used the vehicle to run a few errands and he honestly believed he could borrow the vehicle for a couple days because (1) he and Vick had been friends for over thirty years, (2) Vick did not need the vehicle because Vick was injured and was having either Hooker or another man drive him to and from work, and (3) Vick did not tell him when to return the car. The fact-finder was not required to believe Hooker's testimony and his argument on appeal invites us to reweigh the evidence and reassess witness credibility, which we will not do. As the trial court stated in finding Hooker guilty,

> Mr. Hooker you [sic] testimony was that you needed to run a few places and you needed to run some errands. And it was Mr. Vick that testified that you were going to run over to your mother's place. I find it really odd and when I look at the totality of the circumstances that a couple of guys who've been buddies for 30 some years and you're living with him, you're staying the night there, you've been staying the night there. You borrow the truck to go do a couple of things and then you don't come back to stay the night anymore. You don't answer any phone calls, you don't contact him, you don't take his calls, and he has to go to the drastic step of filing a police report and then just happens upon you out on a public roadway, and has to call the police to get his vehicle back. Those things that you're telling me, that there's no end date, that there's a mistake of fact; I think that your own testimony extinguishes that defense as far as—extinguishes it— that there being a mistake of fact. . . . I think the State has

proven it beyond a reasonable doubt. You had no intention of
taking that truck back to him . . . .

*Id.* at 24-25. We conclude the State presented sufficient evidence to negate
Hooker's mistake of fact defense.

# II. Sentencing

## A. Standard of Review

[9] Sentencing decisions include the imposition of fees and costs. *Berry v. State*, 950
N.E.2d 798, 799 (Ind. Ct. App. 2011). A trial court's sentencing decision is
reviewed under an abuse of discretion standard. *McElroy v. State*, 865 N.E.2d
584, 588 (Ind. 2007). "An abuse of discretion has occurred when the
sentencing decision is clearly against the logic and effect of the facts and
circumstances before the court, or the reasonable, probable, and actual
deductions to be drawn therefrom." *Id.* at 588 (citation and internal quotation
marks omitted).

## B. Probation Conditions

[10] Hooker argues the trial court abused its discretion in sentencing him to
probation for the sole purpose of completing a substance abuse evaluation and
treatment. Specifically, he contends there is no evidence he had a substance
abuse problem either at the time he committed the crime or at sentencing and
therefore the condition that he submit to a substance abuse evaluation and
participate in random drug testing is based on pure speculation. Although

neither party addresses the issue of mootness, we conclude Hooker's claim in this regard is moot.

[11] Generally, an issue is deemed moot and usually dismissed when a court is unable to render effective relief to a party. *Bell v. State*, 1 N.E.3d 190, 192 (Ind. Ct. App. 2013). The trial court sentenced Hooker to 363 days of probation on January 27, 2016. The trial court noted if Hooker completed a substance abuse evaluation and treatment was not deemed necessary, it would discharge him from probation. On March 18, 2016, Hooker completed a substance abuse evaluation and he was not referred to treatment. On April 5, 2016, at the probation department's request, the trial court discharged Hooker from probation. Therefore, this allegation of error is moot. *See Tharp v. State*, 942 N.E.2d 814, 816 n.1 (Ind. 2011) (holding a probationer's challenge to a condition of his probation was moot in part because the probationer had been discharged from probation).

[12] We further acknowledge Indiana courts have long recognized a case may be decided on its merits under an exception to the general rule when the case involves questions of great public interest. *Bell*, 1 N.E.3d at 192. However, given the fact neither party addresses the issue of mootness and Hooker does not detail the relief he seeks on this claim, we opt not to address whether the trial court abused its discretion in ordering Hooker to submit to a substance abuse evaluation and to participate in random drug testing as conditions of his probation.

## C. Probation Fees

[13]  Hooker argues the trial court abused its discretion in ordering him to pay probation fees in excess of statutory limits.  Generally, a trial court must impose probation user's fees upon an individual who is placed on probation after being convicted of a felony.  Ind. Code § 35-38-2-1(b).  However, where, as here, a person is convicted of a misdemeanor, the trial court has discretion to impose probation user's fees.  Ind. Code § 35-38-2-1(b).

> In addition to any other conditions of probation, the court may order each person convicted of a misdemeanor to pay:
>
> > (1) not more than a fifty dollar ($50) initial probation user's fee;
> >
> > (2) a monthly probation user's fee of not less than ten dollars ($10) nor more than twenty dollars ($20) for each month that the person remains on probation;
>
> * * *
>
> > (4) an administrative fee of fifty dollars ($50)[.]

Ind. Code § 35-38-2-1(e).

[14]  Despite the trial court imposing a sliding fee scale on Hooker's probation fees, the probation department imposed Adult Probation Monthly and Initial User Fees totaling $281.30.  Even assuming the probation department imposed the maximum amount on both fees—in light of the time period Hooker actually

served probation—the maximum fees imposed should have totaled no more than $130.[1] *See infra* note 3. Thus, we conclude the amount of probation fees imposed exceeded the statutory authority set out in Indiana Code section 35-38-2-1(e).[2]

## D. Indigency Hearing

[15] Hooker also argues the trial court abused its discretion in not holding an indigency hearing prior to his successful discharge from probation. We agree.

[16] In *Johnson v. State*, 27 N.E.2d 793 (Ind. Ct. App. 2015), Johnson was convicted of a Class A misdemeanor and a Class C misdemeanor. The trial court found Johnson to be indigent for court costs and other fees and ordered a sliding fee scale for probation fees, but delayed making an indigency determination until more information regarding his financial situation came to light. Ultimately, Johnson was assessed probation fees, which he had not yet paid at the time of his appeal. On appeal, Johnson argued the trial court abused its discretion in ordering him to pay probation fees without first conducting an indigency

---

[1] In reaching this sum, we give the probation department the benefit of the doubt and assume the department was entitled to impose the maximum monthly user's fee for January, February, March, and April. Therefore, the total maximum monthly user's fee should total no more than $80. This sum, coupled with a maximum initial user's fee of $50, gives us a total of $130. We further note it appears the probation department assessed a year's worth of probation fees at the maximum amount. Hooker was sentenced to one year of probation. If he served the entirety of his sentence on probation with the maximum user's fees, he could have been assessed probation user's fees of $50(1) + $20(12), which equals $290—an amount just $8.70 more than what Hooker was assessed.

[2] The State argues this issue is waived because Hooker did not object to the imposition of fees at the sentencing hearing. However, Hooker did not have knowledge of the erroneous fees assessed by the probation department until after he was successfully discharged from probation. For this reason, the State's argument fails.

hearing. We acknowledged Indiana Code section 33-37-2-3 requires a trial court to conduct an indigency hearing if it imposes costs upon a defendant. *Id.* at 794. However, we further acknowledged the statute does not dictate when the indigency hearing should be held. *Id.* at 794-95. Because a trial court has the authority to wait and see if a defendant can pay probation fees before it finds a defendant indigent, coupled with the fact a trial court has a duty to conduct an indigency hearing at some point in time, we held, "At the latest, an indigency hearing for probation fees should be held at the time a defendant completes his sentence." *Id.* at 795. We therefore remanded to the trial court to conduct an indigency hearing upon the completion of Johnson's sentence.[3]

[17] Similar to *Johnson*, the trial court found Hooker to be indigent for court costs and did not assess a fine. However, the trial court did not find Hooker to be indigent for probation fees and ordered he be placed on a sliding fee scale, directing Hooker to "work with probation, tell them about you know, your lack—I understand, you're in construction and it's a slow time. You don't have any income right now, they're going to be able to adjust your fees accordingly." Tr. at 29. As noted above, the probation department did not adjust Hooker's fees accordingly. In addition, the trial court did not hold an indigency hearing prior to Hooker's successful discharge from probation. We therefore conclude

---

[3] We further note Johnson was assessed a year's worth of probation fees despite only serving five months of probation; Johnson only served five months because his probation was revoked. We found this assessment was made in error and remanded to the trial court to recalculate the amount of fees owed pursuant to the amount of time Johnson actually served on probation. *Johnson*, 27 N.E.3d at 795. *Johnson* therefore stands for the proposition probation fees must reflect the amount of time a defendant actually serves on probation.

the trial court abused its discretion in not holding an indigency hearing and we remand to the trial court to conduct an indigency hearing and determine the amount of probation fees owed to correspond with the amount of time Hooker actually served on probation.

# Conclusion

[18] The State presented sufficient evidence to rebut Hooker's mistake of fact defense and we therefore affirm his conviction. However, the trial court abused its discretion in imposing probation fees without an indigency hearing and we therefore remand to the trial court with instructions to hold an indigency hearing and assess fees consistent with this opinion.

[19] Affirmed and remanded.

Mathias, J., and Brown, J., concur.